PROVIDENCE WASHINGTON INSUR-
ANCE COMPANY, Appellant,

v.

SMULCER TRUCKING COMPANY, Inc.,
Appellee.

No. 15811.

Court of Civil Appeals of Texas.

Fort Worth.

May 3, 1957.

Phinney & Hallman, and Ralph W. Pulley, Jr., Dallas, for appellant.

Jack Connell, Wichita Falls, for appellee.

RENFRO, Justice.

Appellee, Smulcer Trucking Company, Inc., is engaged in transportation for hire by motor vehicle of oil field equipment and heavy oil field machinery. Prior to August 13, 1954, the appellant, Providence Washington Insurance Company, issued its policy to appellee, which read, in part:

"This Policy Insures

"4. The legal liability of the Assured for loss of or damage to the described property directly caused by:

"* * *

"(m) Loading and Unloading, that is, the dropping of property insured hereunder, or accidental collision of the insured property with a stationary object, while in the process of loading or unloading, subject to the following conditions:

"(a) Risk of loading to commence when slings of lifting or propelling device are attached to the insured property being loaded for shipment and to terminate when property is set in designated position on transporting conveyance."

Appellee brought suit against appellant, in which it alleged that while the policy was

in force and while appellee was in the act of transporting, loading and unloading an oil field mud pump for one of its customers, the truck in use overturned or tilted and allowed the mud pump to drop. The pump was damaged to a considerable extent.

Appellee paid for the damage, and demanded reimbursement from appellant. The appellant refused to pay the claim; hence the suit.

After trial without a jury, the court found that at the time of the mishap the appellee's driver had backed the truck to the mud pump for the purpose of loading same; had fastened the slings or winch line to the mud pump; that with the use of slings or winch line the driver had lifted the mud pump to where it was balanced over the "tail pipe" of the truck; with the mud pump in this position, with the winch line still attached, the driver drove the truck a few feet forward from the drilling rig in order to finish pulling the mud pump on to the truck and fastening it; that the process of loading the pump had commenced but had not been completed by being set in designated position on the truck when the fall occurred. The court concluded appellee was entitled to recover under paragraph (m) set out hereinabove.

Appellant contends the finding that the driver had commenced but not completed the process of loading the mud pump was not supported by the greater weight of the credible testimony.

The witness Crawford, driver of the truck at the time in question, testified the mud pump was a unit, complete within itself, weighing from 16,000 to 18,000 pounds and was attached to skids. The truck in use had a flat bed and a rolling tail board. He tied the truck's winch to the front of the mud pump. The following questions and answers regarding the actual operations appear in the statement of facts:

"Q. Tell the court what you did in moving this pump. A. Backed up to it, picked up the front end of it—

"Q. Did you tie your winch onto it? A. Yes, sir, I tied onto it—like I have always done.

"Q. In other words, you have a winch on that truck? A. Yes, sir.

"Q. And a line? A. Yes, sir.

"Q. And you let a sufficient amount of line off the winch to tie onto the mud pump? A. Yes, sir.

"Q. You did tie on? A. Yes.

"Q. Then what did you do? A. Picked up the front end of the pump. You have to do that to take the bolts off.

"Q. Yes, sir. A. I got them off, pulled it up a little ways, found there where it was sitting on 8 x 10 sills, so I pulled it on up. Just before it broke over onto the truck I started to tie it down, but couldn't get it back on account of the sills and mud and I got in the truck and drove it up a little ways—I guess 25 feet.

"Q. Let me stop you and ask you this. You said you stopped pulling on your winch when the mud pump was just about to break over? A. Yes, sir.

"Q. In other words, as I understand it, the mud pump was balanced almost half and half over the edge of the tail pipe? A. Yes, sir.

"Q. And the mud pump was not on the ground? A. No, sir.

"Q. Nor was it completely on the truck? A. No, sir, just broke up, sitting up something like that (indicating) on the tail board.

"Q. Just balanced? A. Yes, sir.

"Q. Why did you just balance it in that manner? A. Because I had to get back there, get under there to tie it down. I had to move before I could get under there, get away from those 8 x 10 sills.

"Q. In order to do that, did you have to pull up some? A. Yes, sir, I did.

"Q. You did pull up? A. Yes, sir.

"Q. Ordinarily in your business, is that ordinarily the way you load a mud pump? A. Yes, sir.

"Q. In other words, you hook onto it, balance it over your tail pipe, then pull up a sufficient distance to complete the loading? A. Yes, sir. You can't tie it down in muddy places where you can't get under it.

"Q. To complete that loading, after you pull away from the location, you tighten up on the winch line? A. Yes, sir.

"Q. And pull it completely up on the truck? A. Yes, sir."

On cross-examination the witness further testified:

"A. * * * If you pulled those up the back of that truck, it breaks down, and if at the point it breaks over it was still on that roller, if you break it down it would probably come right on up in the cab. It could do that, and that floor has got iron, and if it is on the rolling tail board, when you break it down it is coming on up.

"Q. What do you generally put to stop it? A. I generally chain that back end and then break it down."

And further, "Now, in connection with this move, Mr. Crawford, would you have, ever have slacked your winch line until you got over to start to unload the pump?" The witness answered, "No, sir, not until I got over. I would have pulled the pump on down, went on and scoot it off."

In answer to the question, on cross-examination, "Now, aren't you trying to tell us you had loaded the pump", the witness said, "I was trying to tell you I had pulled that as far up on the tail board as I was. going to pull it without putting some chains on when I was moving on out."

Appellant introduced, for impeachment purposes, a statement the witness had signed soon after the accident, wherein appeared the statement, "After getting the

pump loaded I pulled my truck forward about 20 feet and stopped."

The last question asked the witness on cross-examination was, "Did you say that your pump was in the designated position when you pulled away from that derrick?" The witness answered, "It was, besides chaining it down." Appellant insists the above answer and the written statement show conclusively that loading had been completed before the damage occurred to the pump.

In order for an appellate court to justify its action in setting aside a finding of the trial court it must appear that the finding is without any substantial support in the evidence, or that it is against such an overwhelming preponderance of the evidence as to be manifestly wrong, or that it is unsupported except by conjecture or surmise. 3-B Tex.Jur., pp. 463-464.

The written statement did not detail the actions of the witness on the occasion in question and gave no reason for his stopping a few away. The trial court was entitled to believe the testimony of the witness as given at the time of the trial and could believe that the written statement, from which we have quoted, did not give the whole picture of the procedure followed by the witness on the occasion in question. 41-B Tex.Jur., p. 866.

The witness repeatedly testified that the pump had not been completely loaded but he still needed "to break it down" or "pull it down". In our opinion the trial court was justified in believing the witness included "breaking down" or "pulling down" the pump as a part of the process of "tying it down". The evidence supports the finding the loading of the pump had not been completed by being set in the designated position.

The findings of the trial court in a nonjury case are to be interpreted in the light of the pleadings and proof in the case and so as, if possible, to sustain the judg-

ment rendered. Daniels v. Wight, Tex. Com.App., 249 S.W. 454; Elder, Dempster & Co. v. Weld-Neville Cotton Co., Tex. Com.App., 231 S.W. 102.

■ An appellate court will not disturb the fact findings if there is some evidence of probative value to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. Googins v. E. W. Hable & Sons, Tex.Civ.App., 237 S.W.2d 705.

Viewed in the light of the foregoing rules, we are of the opinion the evidence is amply sufficient to support the findings of the trial court. Since the mud pump had not been set in designated position when the damage occurred, the court was correct in holding the appellant liable under the cited provisions of the policy.

Judgment of the trial court is affirmed.