TRAVELERS INSURANCE COMPANY,
Appellant,

v.

EMPLOYERS CASUALTY COMPANY,
Appellee.

No. 10754.

Court of Civil Appeals of Texas.

Austin.

April 20, 1960.

Rehearing Denied May 11, 1960.

Gay & Meyers, Austin, for appellant.

Leachman, Gardere, Akin & Porter, Dallas, for appellee.

ARCHER, Chief Justice.

This is an appeal from an order of the 98th District Court of Travis County, Texas, sustaining a plea of privilege filed by appellee, Employers Casualty Company, to be sued in Dallas County, Texas, the location of its principal place of business.

The appeal is based on two points:

"1. The error of the Court in sustaining, and not overruling, appellee's plea of privilege.

"2. The error of the Court in holding that appellant failed to prove that the accidental injuries to Sam Steward Smith occurred during the unloading of the truck covered by appellee's policy of insurance within the meaning of that policy."

This suit was filed as a declaratory judgment action to determine which of the two insurance companies afforded primary coverage for the fatal injuries sustained by Sam Smith in Travis County allegedly as a proximate result of the negligence of Borders Steel Erection Company. Travelers had insured Borders under a general liability policy. Employers had issued a standard automobile liability policy for Capitol Aggregates, Inc., on its cement trucks and to any other person while using such trucks with consent of Capitol. The beneficiaries of Smith instituted suit against Borders and Travelers undertook the defense, made a compromise of claims asserted against Borders, sought a court ruling that primary coverage was under Employers' policy since Borders was using the truck of Capitol within the meaning of the policy, which provided that use of the truck should include "the loading and unloading thereof."

Appellee filed its plea of privilege to be sued in Dallas County, the county of its residence. The controverting plea alleged that venue was properly in Travis County by virtue of Subdivision 23 of Art. 1995, Vernon's Ann.Civ.St.

At the hearing before the court without a jury appellant introduced replies to requests for admissions, and the original petition, other pleadings and certain stipulations that

Travelers was the insurer of Borders; that Employers issued to Capitol a standard Texas automobile policy containing provisions definding "use" as to the "loading and unloading thereof"; that the trucks would empty the concrete into a bucket attached to a crane belonging to Borders located at the construction site; that the crane buckled and inflicted the fatal injuries to Smith; that the crane was being used to transport the bucket to a portion of the construction work.

Appellant says that the narrow question on appeal is whether or not the alleged negligent acts of Borders, resulting in Smith's death, occurred while the concrete truck was being unloaded.

Appellee takes the position that the truck had been completely unloaded within the meaning of the policy prior to the time when the boom of the crane collapsed.

Capitol had an agreement to deliver the mix to the job site. Borders furnished certain buckets into which the mix was to be unloaded. The truck driver emptied the mix into the bucket, after which the bucket was moved by the crane owned and operated by Borders.

H. Q. Haile, Jr., called by defendant, appellee, testified:

"Q. Will you state your name, please? A. H. Q. Haile, Jr.

"Q. Where do you live? A. 4907 Beverly Hills Drive in Austin.

"Q. By whom are you employed? A. Capitol Aggregates, Inc.

"Q. In what capacity? A. As Vice President and Manager.

"Q. Were you so employed all during the month of February of this year? A. Yes, sir.

"Q. Did you have the matter called to your attention when the crane boom buckled and killed some men out on the high school job here in Austin? A. Yes, sir.

"Q. Who was the general contractor on that job? A. M. Z. Collins Construction Company.

"Q. Did you have a subcontract from Collins? A. A verbal subcontract, yes.

"Q. What did that contract embrace? A. To furnish ready-mix concrete to him for the construction of that project.

"Q. In reference to the delivery of the concrete or cement, or what do you call it? A. The concrete, yes, sir.

"Q. The concrete on the job, what did your contract embrace there? A. Our agreement was to bring ready-mix concrete of a certain specification to the job to be used by the general contractor in the construction.

"Q. Was there any agreement in reference to where delivery was to be made of the concrete? A. Our normal procedure there would govern. We did not have a contract with him, so far as to put it in one place.

"Q. What is your normal procedure? A. Our normal procedure is in the event we can put our trucks to the form, is to dump into the forms. If we cannot, and the contractor chooses to use some conveying method to take the concrete from our trucks to its final resting place, then we put it in his bucket or in some events they even use a conveyor system, something like that.

"Q. After it is put into the bucket or conveyor, do your company or employees have any further control over the concrete? A. Absolutely none whatsoever.

"Q. How is it emptied into the buckets that are attached to the crane that lifts it up to the higher floors; how is it dumped into those buckets, Mr. Haile? A. We have a chute attached to the back of our truck that is

used to convey the concrete from the rotating drum to the bucket. It flows down this chute and drops into the bucket.

"Q. Then your testimony is that after it is so emptied into the bucket that neither your company nor any of your employees have any further control whatsoever over that concrete? A. That is absolutely right; no physical contact of any kind.

"Q. On this occasion when the boom buckled and fell on these men, did you or your company have any control whatsoever over that boom? A. Absolutely none.

"Q. Will you state whether or not, even after your trucks have driven off, that disposition is made of the buckets of concrete? A. On some occasions I am sure that is true. We can empty our concrete into the bucket and drive our truck away from the jobsite, and then the concrete bucket can very conceivably be moved and dumped into the forms.

"Q. Tell the Court whether or not conveying this bucket that the concrete has been emptied into up to the place where the concrete is to be emptied from the bucket is part of your *transporation* job? A. No, sir; absolutely not.

"Q. That's all."

On cross-examination Mr. Haile testified that when possible the mix was delivered to the place it was to be used and that delivery of the mix was completed as soon as it leaves the truck and Capitol was no longer responsible for it; that when the mix is put into the bucket attached to the crane there was no duty to take the mix to where it was to be used.

The Trial Court sustained the plea and ordered the transfer of the cause to Dallas County.

No request for findings of fact and conclusions of law was made.

We believe the court was correct in entering the order transferring the cause and impliedly in finding that appellant failed to prove a cause of action against appellee, and that any negligence of Borders proximately causing the fatal injuries to Smith occurred after the completion of the unloading of the truck belonging to Capitol, and no coverage was afforded Borders under appellee's policy.

In order to deprive appellee of its right to a trial in the county of its residence, the facts of the cause must be brought within one of the exceptions of the venue statute, and the burden was on appellant to plead and prove that its cause fell within one of the exceptions in Subdivision 23 of Art. 1995.

Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, Com.App., Sec. A, opinion adopted by Supreme Court; 1 McDonald, Texas Civil Practice, 394; R. B. Smith, Inc. v. W. E. Merritt & Sons, Tex.Civ.App., 277 S.W.2d 801, no writ history; 43-B Tex.Jur. 392.

Appellant cites American Employers' Ins. Co. v. Brock, Tex.Civ.App., 215 S.W.2d 370, writ ref., N.R.E., and Panhandle Gravel Co. v. Wilson, Tex.Civ.App., 248 S.W.2d 779, writ ref., N.R.E., as supporting its construction of the "Loading and Unloading" clause of the Standard Automobile Liability Policy. These cases are to be distinguished on the facts.

We do not believe the cases follow the "completed operations" theory, but rather the "coming to rest" theory.

There is at most a remote connection with Capitol's truck and the fatal accident. If the crane and its boom had been structurally strong enough to do the work it was provided to perform, the accident in all probability would not have occurred.

The "loading" and "unloading" clause has not been extended to cover remote accidents in many cases such as Liberty Mutual Ins. Co. v. Hartford Accident & In-

demnity Co., 7 Cir., 251 F.2d 761, and cases therein cited.

The Trial Court having found by the judgment that the truck had been completely unloaded within the meaning of the policy and we believing that the evidence supports the action of the Trial Court, we should not set aside such implied finding but should sustain the judgment rendered.

Googins v. E. W. Hable & Sons, Tex. Civ.App., 237 S.W.2d 705, er. ref., N.R.E.

The judgment of the Trial Court is affirmed.

Affirmed.

GRAY, Justice (dissenting).

I do not agree with the conclusion reached by Chief Justice ARCHER and without restating the facts I will briefly note my dissent.

Smith was injured in Travis County and appellant's suit is to establish liability for that injury. This liability originated, if at all, in Travis County and not elsewhere and except for this injury the cause of action would never have arisen.

It is undisputed that appellee issued its policy of insurance covering Capitol Aggregates, Inc.'s trucks while loading and unloading, that it denies liability and that it is a corporation.

The only question presented on this venue hearing is: Did a part of appellant's cause of action arise in Travis County? If it did then venue in Travis County is fixed by Exception 23 which in part provides: "Suits against a private corporation * * * may be brought * * * in the county in which the cause of action or part thereof arose * * *."

It is not disputed that appellee issued the contract of insurance in question; that Smith was injured and that such injury occurred in Travis County where Capitol Aggregates, Inc.'s trucks were being operated.

These are the facts that gave appellant the right to bring the suit and are the facts from which appellant's remedy originated. In Western Wool Commission Co. v. Hart, Tex.Sup., 20 S.W. 131, 132, the court said:

"Every cause of action, it is said by Mr. Pomeroy, consists, when subjected to analysis, of two separate and distinct elements,—the primary right and duty of the parties respectively, and the wrongful act or omission violating it. Our statute (section 21, art. 1198) seems to recognize the fact that the cause of action consists of two distinct elements, as it provides that the jurisdiction of the court shall attach where 'a part thereof arose.' The proof certainly shows that the transactions between appellant's agent and appellee in Howard county, with reference to the shipment of the wool to appellant at St. Louis, formed a part of the cause of action, (without these facts, which the proof disclosed, plaintiff showed no right of recovery;) and it is difficult to understand the meaning of the language giving jurisdiction 'where a part thereof arose' if it was not intended to embrace a case like the present."

The court said further:

" * * * in the case under consideration the plaintiff seeks a recovery on the ground that 'a part of the cause of action arose' in Howard county, Tex. That a part of it arose in that county is manifest, because, if the facts (the dealings and transactions between plaintiff and Robinson, appellant's agent in Howard county) be eliminated from this controversy, plaintiff could not recover. That part of the cause of action which arose in that county is so essential to the existence of the cause of action as a whole that there would be none without it."

In Mercantile Bank & Trust Co. v. Schuhart, 115 Tex. 114, 277 S.W. 621, 624, the court quoted with approval from Western

Wool Commission Co. v. Hart, supra, as follows:

"The cause of action is that in which the plaintiff's remedy has its origin— the fact or facts giving him the right to bring the suit. * * * Those facts which show the plaintiff's primary right in the matter are as much a part of the cause of action, and are as necessary as a foundation for the suit, as are those facts showing a violation or invasion of his right, ordinarily termed a breach of the contract or covenant by the defendant."

I would reverse the judgment of the trial court and here render judgment overruling appellee's plea of privilege.