ALFRED LAMBERTI, as Administrator of the Estate of ALFONSO VALENTINI, Deceased, Plaintiff, *v.* ANACO EQUIPMENT CORP. et al., Defendants.

ANACO EQUIPMENT CORP. et al., Third-Party Plaintiffs, and KNICKERBOCKER CONSTRUCTION CORPORATION, Third-Party Plaintiff-Appellant, *v.* TRAVELERS INSURANCE COMPANY, Third-Party Defendant-Respondent.

First Department, March 22, 1962.

*William F. McNulty* of counsel (*Rudser & Fitzmaurice,* attorneys), for appellant.

*John G. Donovan* of counsel (*Terhune, Gibbons & Mulvehill,* attorneys), for respondent.

RABIN, J. Once again, as in the case of *Wagman* v. *American Fid. & Cas. Co.* (304 N. Y. 490), we are called upon to decide whether an automobile liability policy issued to an owner of a truck affords coverage in connection with an accident which it is here claimed occurred during the unloading of that truck.

The facts are as follows: The accident, in which the plaintiff's intestate (Alfonso Valentini) was injured, occurred November 15, 1956 at the site of a housing project then under construction.* Valentini, at the time of the accident, was the driver of a transit-mix concrete truck owned by the Colonial Sand and Stone Company (not a party to this action), the named insured in the policy in question. As its name implies, the truck was engaged in delivering concrete mixed on the truck ready for delivery, for use in connection with the housing project. At the job site the prepared concrete was poured from the truck into the bucket of a crane operated by an employee of the Knickerbocker Construction Corporation—the concrete subcontractor (the third-party plaintiff-appellant on this appeal). The bucket was then hoisted directly from the truck to that portion of the building where the cement was to be used. The empty bucket was then lowered and returned to the transit-mix truck for refilling and the same process repeated.

Prior to the accident the bucket had made two uneventful trips from the truck to one of the upper floors of the building under construction. Each time the bucket returned to the concrete truck it was refilled by Valentini. The hoisting signals, however, were given to the crane operator by a Knickerbocker employee. This employee also told Valentini when to start and when to stop pouring the concrete from the truck into the bucket. While the third bucketful of concrete was being hoisted to either the 19th or the 22d floor it tipped over and some of the concrete

---

* The plaintiff's intestate brought suit for personal injuries but died during the pendency of the action and the suit was continued by his administrator after his death.

struck and injured Valentini, who was standing on the catwalk of his truck awaiting the return of the bucket for another load.

This suit was subsequently instituted by Valentini, against Knickerbocker as well as against the owner of the crane and the general contractor.* Knickerbocker impleaded Travelers, the insurance carrier covering the truck, alleging that the plaintiff was injured during the unloading of Colonial's truck and, therefore the accident came within the coverage of the " loading and unloading " clause of its liability insurance policy. Under such clause Knickerbocker would be covered although not a named insured if indeed the accident occurred in the course of the unloading of the truck.

Knickerbocker alleged in its third-party complaint that Travelers denied coverage and refused to defend and it asked judgment over in the event the plaintiff should recover judgment against it. Travelers joined issue disclaiming liability under its policy. It waived the condition of its policy which provided that until the amount of plaintiff's recovery shall have been determined there could be no recovery against the company.

After trial, without a jury, the court granted judgment to the plaintiff, against Knickerbocker, in the sum of $7,500. It also found that Travelers' automobile policy did not cover Knickerbocker's liability to the plaintiff because it held that the accident did not come within the " loading and unloading " provision of the policy. Accordingly, Knickerbocker's third-party complaint was dismissed and it is from that dismissal that it appeals.

The issue can be stated very simply. Did the accident occur in the course of the " unloading " of the truck? If it did then Knickerbocker was an insured under the liability policy which was issued by Travelers and its claim over should not have been dismissed. If, however, the accident did not occur in the process of " unloading " within the meaning of the policy, then the judgment of the court should be upheld.

We conclude that the injuries of Valentini were sustained in the course of the " unloading " of the truck as such term is construed by the Court of Appeals in the case of *Wagman* v. *American Fid. & Cas. Co.* (304 N. Y. 490, *supra*). In that case the court referred to the " doctrinal division among the authorities " (p: 494) with respect to the interpretation of the words " loading and unloading ". It rejected the narrow inter-

---

* At the trial the plaintiff discontinued as against the owner of the crane and the general contractor, leaving Knickerbocker, the appellant, as the sole defendant.

pretation whereby the word " ' unloading ' is taken to embrace only the operation of removing the goods from the vehicle to a place of rest " (p. 494).

The Court of Appeals found (p. 494) that " [t]he broader construction, adopted in a majority of the jurisdictions which have passed upon the question, is that ' loading and unloading ' embrace, not only the immediate transference of the goods to or from the vehicle, but the ' complete operation ' of transporting the goods between the vehicle and the place from or to which they are being delivered ". It said (p. 494) that " [t]he latter view impresses us as sounder ".

The respondent contends that the place of delivery was the bucket of the crane and, therefore, the unloading operation was completed when the concrete had been placed in the bucket. We cannot agree. The bucket cannot be considered " the place * * * to which " the concrete was being delivered. It was merely the necessary conduit by which the concrete was conveyed to its place of delivery. The trip in the bucket to such place of delivery was merely an incident in the unloading operation. Indeed, because of the manner of the operation, the truck could not have been unloaded other than by the repeated trips of the bucket from the truck to the place of use of the concrete. The employment of the crane and the bucket was just as essential a part of the complete operation of unloading as was the discharge of the concrete from the truck into the bucket. As was said in the *Wagman* case (p. 495): " [b]oth operations together constituted the act of ' [un]loading ' the vehicle ". The means by which the material is removed from a truck is of no particular consequence, whether the removal be effected by a rack, by hand or by a crane (see *Employers Mut. Liab. Ins. Co. of Wis.* v. *Pacific Ind. Co.,* 167 Cal. App. 2d 369; *Bituminous Cas. Corp.* v. *American Fid. & Cas. Co.,* 22 Ill. App. 2d 26). The sole test is whether the means used was in the process of unloading. In this case the bucket was merely an instrument to effect the unloading.

It cannot be said that the use of the crane and bucket was related to the construction operation solely. It does not follow, merely because the operation of the crane and bucket was related to the construction function, that it could not also be a part of the unloading function. There can be a dual relationship, and with respect to the use of the crane and bucket such relationship should be found here.

It is not unfair to the insurance carrier to hold that the delivery function was not complete until the concrete reached its ultimate destination. Particularly so in the case of mixed

concrete where there could be no intermediate place of sojourn. By the very nature of that material it is essential that it be taken directly from the delivery truck to the place at which it becomes a permanent portion of the construction. Concrete, unlike lumber or other building materials, cannot be stored at the job site for later incorporation into the structure. It must be deposited immediately at its permanent resting place. It is for that very reason that a transit-mix truck is used in this type of operation. If it were the intention of the insurer to confine its liability to a more circumscribed aspect of the loading process, language appropriate to such end could have been employed. The failure to adopt such delimiting language, particularly after the Court of Appeals decision in the *Wagman* case and in view of the function of the vehicle insured, is indicative of the knowledge if not the intention, of the insurer that it was covering in its policy to Colonial the "complete operation" incidental to loading and unloading.

The answer to the contention that there is no coverage because the crane was not operated by an employee of the truck owner — the named insured — but rather by an employee of the consignee, Knickerbocker, was given by the Court of Appeals in the *Wagman* case when it said as follows at page 495: "Nor may the insurer avoid liability under its policy because plaintiff was an employee of Bond rather than of Gilbert, in the light of the policy's omnibus provision defining the term 'insured' as embracing any person using the vehicle with the permission of the named insured. The effect of that provision was to extend the coverage of the policy beyond the activities of the named insured and its employees."

Accordingly, we find that this accident occurred during the process of "unloading" the transit-mix truck and in consequence the operator of Knickerbocker was an "insured" under the policy.

Having concluded that Travelers is liable under its policy we must next determine the monetary extent of such liability. The verdict rendered on the prime complaint was in plaintiff's favor against Knickerbocker in the amount of $7,500. It is argued by Knickerbocker that it should be granted judgment over in a like sum. On the other hand Travelers, pointing to additional coverage in other policies, contends that if liability is imposed upon it it must be limited to its prorata share of the total coverage available in accordance with the "other insurance" clauses of the policies. If we were to apply these provisions the total liability of Travelers would be approximately $150.

Knickerbocker states that it could readily obtain a judgment against its employee for negligently operating the crane and inasmuch as he is covered by Travelers solely (assuming, of course, that the accident occurred during the unloading process), Travelers would ultimately be obliged to pay it in full. In consequence it seeks the full recovery in this action for the alleged purpose of avoiding circuity of suits.

However, in seeking such relief here it is asking for relief that it may never be entitled to obtain. In order to obtain a judgment against the employee it would be obliged to show that its employee was guilty of negligence while it was held derivatively liable solely because of the negligence of this employee. That question was not tried in this case. The employee was not made a party. If Knickerbocker wanted to impose full liability on Travelers it should have vouched in the employee so that that issue could have been determined.

Accordingly, the judgment, insofar as appealed from, should be reversed on the law and on the facts and judgment directed in favor of the third-party-plaintiff Knickerbocker on its third-party complaint against the third-party defendant Travelers in the amount of $150, with costs to the appellant.

EAGER, J. (dissenting). I would affirm the judgment appealed from. The determination of the learned Justice at Special Term that the Travelers' policy did not cover the acts of the crane operator does not conflict with the decision in *Wagman* v. *American Fid. & Cas. Co.* (304 N. Y. 490).

Under the "complete operation" doctrine adhered to in this State and as defined in *Wagman*, it is generally held that coverage by virtue of the "loading and unloading" clause in an automobile liability policy continues until the goods, which were transported in the vehicle, reach "the place  *  *  *  to which they are being delivered" (p. 494). But, in holding that the vehicle insurance coverage continues until delivery is completed, none of the leading decisions (*Wagman* included) purport to extend the unloading clause coverage to acts or omissions of the consignee or other third persons which are not reasonably or normally a part of the delivery function.

The question of how far the "unloading" coverage extends to include acts or omissions in connection with the movement of the goods from the insured vehicle is not a matter to be viewed solely in the light of the final destination of the goods as they move from the vehicle in the hands of the consignee. We must not lose sight of the fact that we are dealing with a policy primarily written to cover liability in connection with the owner-

ship, maintenance and use of a vehicle in the transporting of goods; and that the clause for coverage during loading and unloading was written into the policy solely as an extension of the vehicle use coverage. (See *Wagman* v. *American Fid. Cas. Co., supra*; *Lumbermens Mut. Cas. Co.* v. *Employers' Liab. Assur. Co.,* 252 F. 2d 463 [C. C. A. 1st, 1958]; *Pacific Automobile Ins. Co.* v. *Commercial Cas. Ins. Co.,* 108 Utah 500; *Ferry* v. *Protective Ind. Co.,* 155 Pa. Superior 266.) Moreover, there is clear authority for the limiting of the coverage to accidents which are causally related to the use and unloading of the vehicle. "The rationale of the 'complete operation' doctrine * * * is that the facts of each case must establish a causal relationship between the 'use' and 'unloading' of the vehicle and the injuries inflicted." (*Raffel* v. *Travelers Ins. Co.,* 141 Conn. 389, 395.) "There must be some causal relationship between the use of the insured vehicle as a vehicle and the accident for which recovery is sought." (*Pacific Automobile Ins. Co.* v. *Commercial Cas. Ins. Co., supra,* p. 509.) (See, also, *Maryland Cas. Co.* v. *New Jersey Mfrs. Cas. Ins. Co.,* 48 N. J. Super. 314, affd. 28 N. J. 17.)

The causal connection between the use and unloading of the vehicle and the movement of the goods therefrom is broken where the consignee takes full and exclusive possession and control of the goods after they leave the truck. In the application of the "complete operation" doctrine, it is merely held that the unloading coverage continues "until delivery is effected" (*B & D Motor Lines* v. *Citizens Cas. Co. of N. Y.,* 181 Misc. 985, 987, affd. 267 App. Div. 955) or, as otherwise stated, until the goods are moved "to the place where the employees of insured turn them over to the party to whom they are to make delivery" (*Pacific Automobile Ins. Co.* v. *Commercial Cas. Ins. Co., supra,* p. 505).

Where the consignee takes over and assumes exclusive possession and control of the goods or an installment thereof after they leave the vehicle, the delivery thereof is complete. Upon his taking full responsibility for the goods, and without there being any further duties imposed upon the vehicle carrier with respect to delivery thereof, the further movement of the goods in the hands of the consignee and in furtherance of his purposes is no part of the delivery function. Acts or omissions of the consignee or his employees in connection with such further movement, being independent acts on his account, are no part of the delivery process from the standpoint of the use or unloading of the truck. Thus, he and his insurer should be chargeable with responsibility therefor rather than the vehicle insurer. So,

on reason and on authority, an accident resulting from such acts or omissions is not the subject of coverage under the use and unloading provisions of the automobile liability policy. (See, further, *Employers' Mut. Liab. Ins. Co.* v. *Ætna Cas. & Sur. Co.*, 7 A D 2d 853; *Eastern Chem.* v. *Continental Cas. Co.*, 23 Misc 2d 1024; *General Acc. Fire & Life Assur. Corp.* v. *Jarmuth*, 32 Misc 2d 424; *Moore-McCormack Lines* v. *Maryland Cas. Co.*, 181 F. Supp. 854 [S. D. N. Y.]; *Zurich Gen. Acc. & Liab. Ins. Co.* v. *American Mut. Liab Ins. Co.*, 118 N. J. L. 317.)

We are, of course, to consider each case in light of the special facts involved, namely, the nature and quantity of the merchandise carried and delivered, the agreement of the parties, the normal custom and practices concerning delivery of the same, and the special circumstances surrounding the particular delivery. (See 7 Appleman, Insurance, § 4322; *Franklin Co-op. Creamery Assn.* v. *Employers' Liab. Assur. Corp.*, 200 Minn. 230.) Here, the cement, upon its being removed from the truck, was to be immediately taken over and used by the contractor, Knickerbocker Construction Corporation, in its construction work. The final destination of the cement in the hands of the contractor was a point in the building's 18th or 19th floor where it was to be poured, leveled and laid into a floor. In this connection, the hoisting of the same from the insured truck to the floor high above was by crane and bucket owned, controlled and operated by the contractor. The matter of getting the cement up there and the pouring and laying of the same in the floor was of no concern to the truck carrier. Its business was solely the sale, mixing and delivery of cement, and it does not appear as a matter of fact or as a matter of common practice that the hoisting, pouring and laying the cement was a part of the delivery function from the standpoint of the use of the truck.

Under the circumstances here, it is not logical to view the acts of the contractor in using the crane and bucket to hoist and pour the cement as a part of the trucker's delivery function. Rather, any person concerned with such acts would naturally look upon them as independent acts in furtherance of the construction function. Furthermore, it is well known that contractors generally carry liability insurance to cover all operations in connection with their construction work, and thus, one would ordinarily look for coverage for such operations to the liability insurer of the contractor rather than to the vehicle liability insurer.

To direct indemnification of the contractor here by the vehicle insurer for the acts of the contractor's employees in the hoisting of the cement for construction purposes has the effect, in

my opinion, of broadening the unloading clause to cover hazards not reasonably to be considered within the contemplation of the parties to the vehicle policy. To so hold does violence to the fundamental rule that the question of coverage is to be determined in light of the intention of the parties to the policy contract as disclosed by the provisions thereof as a whole. (See 45 C. J. S., Insurance, § 827; also Ann. 160 A. L. R. 1262.) *Wagman* and the decisions cited by the majority do not, in my opinion, call for such a result and, therefore, I believe that the conclusion reached below was correct.

BOTEIN, P. J., and BASTOW, J., concur with RABIN, J.; EAGER, J., dissents in opinion in which BREITEL, J., concurs.

Judgment, insofar as appealed from, reversed on the law and on the facts and judgment directed in favor of the third-party-plaintiff Knickerbocker on its third-party complaint against the third-party-defendant Travelers in the amount of $150, with costs to the appellant. Settle order on notice.