The TRAVELERS INSURANCE CO.,
Appellant,

v.

EMPLOYERS CASUALTY CO., Appellee.

No. 16185.

Court of Civil Appeals of Texas.

Dallas.

June 28, 1963.

Rehearing Denied July 26, 1963.

Gay & Meyers, Austin, for appellant.

Leachman, Gardere, Akin & Porter, and Gordon H. Rowe, Jr., Dallas, for appellee.

DIXON, Chief Justice.

This case involves the interpretation and application with reference to particular facts of a Texas Standard Form automobile liability policy covering trucks while unloading ready-mixed concrete.

The policy in question was issued by Employers Casualty Company, hereinafter called Employers, to Capitol Aggregates, Inc., hereinafter called Capitol. The latter company makes and sells ready-mixed concrete. The concrete is mixed while being transported in a large revolving drum on a truck.

The accident which gave rise to the present controvery occurred at the site of the construction of a new high school building in Austin, Travis County, Texas. In the performance of Capitol's contract with the general contractor, one of Capitol's trucks arrived at the construction site, lowered a chute at the rear of the truck which caused the ready-mixed concrete to flow down the chute into a bucket attached to a crane. The bucket was then moved by the crane to a form into which the concrete was emptied from the bucket. In the course of moving a bucket of concrete to the form the crane collapsed, killing three employees of the general contractor.

The bucket and crane were not owned or operated by Capitol. They were owned and were being operated by Borders Steel Erection Company, hereinafter called Borders. The latter company was the concrete subcontractor on the construction project. There was no privity of contract between Capitol and Borders. Capitol's contract was with the general contractor.

Travelers Insurance Company, appellant, hereinafter called Travelers, had issued a Texas standard form contractor's general liability policy to Borders. The beneficiaries of the three men killed brought suit against Borders and their claims were settled by Travelers for $61,020.30.

Thereafter Travelers brought suit in Travis County against Employers seeking a ruling that primary coverage of the accident was afforded under the policy issued to Capitol by Employers because the policy covered the use of Capitol's trucks while loading and unloading. The two insurance companies are agreed that the payment of $61,020.30 was a reasonable settlement.

Appellee Employers filed a plea of privilege asking that the suit be transferred to Dallas County where appellee has its principal office. Travelers filed a controverting affidavit alleging that venue properly lay in Travis County under subd. 23 of Art. 1995, Vernon's Ann.Civ.St., which permits suit to be maintained against a corporation in the county where the cause of action arose.

Appellee's plea of privilege was sustained and on appeal the order was affirmed. Travelers Insurance v. Employers Casualty Co., Tex.Civ.App., 335 S.W.2d 235, wr. ref. n. r. e. The Court of Civil Appeals at Austin upheld the trial court's implied finding that appellant had failed to prove a cause of action, therefore subd. 23 Art. 1995, V.A.C.S. could not be invoked to

cause the case to be transferred to Dallas County.

In a trial in Dallas County on the merits before the court without a jury, judgment was rendered in favor of Employers that Travelers take nothing by its suit.

Travelers rests its appeal on one point of error. It alleges that the trial court erred in holding that "the unloading of the ready-mixed concrete was completed at the instant it was emptied from the trans-mix truck into a bucket attached to a crane which was to carry it to a place it would occupy in the slab, instead of holding that the unloading continued while the concrete was carried in a continuous movement from the truck to the form."

It is generally agreed that in policies such as that here under consideration the phrase "including loading and unloading" is a phrase of expansion and extension. But the decisions are not in agreement as to the exact extent of the expanded coverage.

One line of decisions follows the "coming to rest" theory. The substance of this theory is that the unloading "includes the process of removing or lifting the article from the truck up to the point where the article is first set down or ceases in the movement which took it from the truck." Pacific Auto Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251 (1945) and annotations following.

The other line of decisions follows the "complete operation" theory, which appellant contends has been adopted as the rule in Texas. Red Ball Motor Freight v. Employers Mut. Liability Ins. Co., 5 Cir., 189 F.2d 374; Allstate Ins. Co. v. Valdez, D.C., 190 F.Supp. 893.

However that may be, the authorities in other jurisdictions are apparently not in harmony as to the meaning of the "complete operation" theory. Some cases hold that the theory means that the unloading continues until an article, such as concrete, reaches its "ultimate destination," or "the place of its use." Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226

N.Y.S.2d 70; Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592.

Other cases hold that a "complete operation" theory means that the unloading continues "to the place where the employees of insured turn them over to the party to whom they are to make delivery." Pacific Auto Ins. Co. v. Commercial Casualty Ins. Co., supra. This is the holding in American Employers Ins. Co. v. Brock, Tex.Civ. App., 215 S.W.2d 370, wr. ref. n. r. e., a Texas case relied on by appellant.

We are of the opinion that under the particular circumstances of this case we must hold that the unloading of Capitol's truck had been completed before the accident occurred, therefore the judgment should be affirmed. We base our conclusions on four grounds, which we shall now state.

(1) We believe we are bound by the holding of our Supreme Court when it declined to grant a writ of error in Travelers Ins. Co. v. Employers Casualty Co., Tex.Civ.App., 335 S.W.2d 235 with the notation "refused, n. r. e." The notation means that though the Supreme Court may not have agreed with everything said in the opinion of the Austin Court of Civil Appeals, it did agree that the judgment of the Court of Civil Appeals was correct. The only possible ground the Supreme Court could have had for holding that the judgment was correct was that Travelers had failed to plead and prove a cause of action as required by subd. 23 of Art. 1995, V.A. C.S. Such a holding necessarily implies that the unloading had been completed at the time of the accident, for it is undisputed that the accident occurred and that it occurred in Travis County. If the unloading had not been completed at the time of the accident the judgment sustaining Employers' plea of privilege could not have been correct.

Appellant in seeking to avoid the effect of the Supreme Court's holding says that the judgment in Travelers Ins. Co. v. Employers Casualty Co., Tex.Civ.App., 335

S.W.2d 235 has no binding effect because it was merely an order entered after a venue hearing at which less evidence was introduced than in the trial on the merits. We cannot agree with this contention.

When it is sought to retain venue in a county where the cause of action arose under subd. 23 of Art. 1995, V.A.C.S., it is necessary at the venue hearing to plead and prove a cause of action. Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, 67; Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91.

As to the evidence, the only difference in the evidence introduced at the venue hearing and at the trial on the merits was that at the hearing on the merits a general contractor named George Brock testified. He stated that the ready-mixed concrete, because of its nature and quality, begins to harden immediately upon its coming to rest, hence is not a storage item "except at the place where you finally want it to come." However Brock's testimony was only cumulative of the testimony given at the venue hearing by H. W. Haile, Jr., Capitol's Vice-President and Manager, which testimony was read into the record at the trial on the merits. Haile testified that it is not practicable to "stockpile" mixed concrete.

■ (2) The Austin Court of Civil Appeals in its opinion above referred to holds that Texas follows the "coming to rest theory." Appellant, as we have stated, contends that Texas follows the "complete operation" theory. Even if we were to accept appellant's contention in that regard we would nevertheless hold that the Texas version of the "complete operation" theory does not go so far as to embrace the "ultimate destination" doctrine of Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 and other cases. It adheres to the principal announced in American Employers Ins. Co. v. Brock, Tex.Civ. App., 215 S.W.2d 370, to the effect that the unloading is completed when the material being unloaded is turned over to the party to whom delivery is to be made. In this case the party was Borders, the subcontractor acting for and in behalf of the general contractor with whom Capitol had its contract. The actual unloading of the material from Capitol's truck into Borders' bucket had been completed and Borders' crane collapsed after the concrete had been turned over to Borders.

Appellant relies, among others, on both the Brock case above cited, and the case of Panhandle Gravel Co. v. Wilson, 248 S.W. 2d 779. The facts in the above two cases differentiate them from the present case.

In the Brock case the facts undoubtedly brought the case within the loading provision of the policy. The opening and closing of a sidewalk elevator shaft by the insured's employees was certainly a part of the loading process whereby the employees of the truck owner undertook to load a can of garbage from the elevator to the truck. However as we have already pointed out, the Brock case by reason of its pronouncement as to the law of "unloading" seems to us actually to support appellee's position as to the law applicable in this case.

In the Wilson case a large rock fell off a truck while it was being driven on the highway a considerable distance from the gravel company's plant. But as appellant itself says in its brief the accident came about "Because of the negligent manner in which it [the truck] was loaded." It is plain that the negligent loading of the truck had a causal connection with the accident in the Wilson case, which fact seems to us to distinguish it from the present case.

■■ (3) We think also that coverage under the "loading and unloading" provisions includes a requirement of showing some causal connection between the loading or unloading and the accident. Travelers Ins. Co. v. Employers Casualty Co., Tex. Civ.App., 335 S.W.2d 235; General Accident Fire & Life Assurance Corp. v. Jarmuth, 32 Misc.2d 424, 150 N.Y.S.2d 836; Caron v. American Motorists' Ins. Co., 277

Mass. 156, 178 N.E. 286; Perry v. Chipouras, 319 Mass. 473, 66 N.E.2d 361; Liberty Mutual Ins. Co. v. Hartford, etc., 7 Cir., 251 F.2d 761. In this case, so far as the record shows, it was a defect in Borders', crane which caused the accident, not anything done in the unloading of Capitol's truck. The connection between the accident and unloading of the truck seems too remote to include coverage of the accident under Capitol's policy.

■ (4) If there is a fact question involved in this case (we do not say there is) we must uphold the implied finding of the Austin Court of Civil Appeals and the trial court here that Capitol's unloading process had been completed when the accident occurred. Travelers Ins. Co. v. Employers Casualty Co., Tex.Civ.App., 335 S.W.2d 235; Providence Washington Ins. Co. v. Smulcer Trucking Co., 302 S.W.2d 255.

There is evidence to support such a finding. We quote portions of the testimony of Haile:

"Q. Who was the general contractor on that job?

"A. M. Z. Collins Construction Company.

"Q. Did you have a subcontract from Collins?

"A. A verbal subcontract, yes.

"Q. What did that contract embrace?

"A. To furnish ready-mix concrete to him for the construction of that project."

\*  \*  \*  \*  \*  \*

"Q. The concrete on the job, what did your contract embrace there?

"A. Our agreement was to bring ready-mixed concrete of a certain specification to the job to be used by the general contractor in the construction."

\*  \*  \*  \*  \*  \*

"Q. After it is put into the bucket or conveyor, do your company or employees have any further control over the concrete?

"A. Absolutely none whatsoever."

\*  \*  \*  \*  \*  \*

"Q. On this occasion when the boom buckled and fell on these men, did you or your company have any control whatsoever over that boom?

"A. Absolutely none.

"Q. Will you state whether or not, even after your trucks have driven off, that (sic) disposition is made of the buckets of concrete.

"A. On some occasions I am sure that is true. We can empty our concrete into the bucket and drive our truck away from the job site, and then the concrete bucket can very conceivably be moved and dumped into the forms.

"Q. Tell the court whether or not conveying this bucket that the concrete has been emptied into up to the place where the concrete is to be emptied from the bucket is part of your transporting job?

"A. No, sir; absolutely not."

\*  \*  \*  \*  \*  \*

"A. \*  \*  \* if he wants to start piling it on the ground, it is his, as soon as it gets out of the truck."

Appellant's point on appeal is overruled.

The judgment of the trial court is affirmed.

WILLIAMS, J., concurs.

BATEMAN, Justice (concurring).

I concur in the result reached, but only on the first ground mentioned in the main opinion. We are in agreement that our Court is bound by the conclusions of the Austin Court of Civil Appeals in Travelers Ins. Co. v. Employers Casualty Co., Tex. Civ.App., 335 S.W.2d 235, because of the

refusal of the writ of error, "No Reversible Error"; otherwise this would be a dissenting opinion since it is my earnest conviction that the conclusion of the Austin Court, that appellant failed to prove a cause of action, was wrong. Likewise, I am unable to agree with the second, third and fourth grounds for affirming the judgment, as set forth in the main opinion. In discussing those grounds I shall use the same numbers to avoid verbiage.

(2) There seems to be considerable confusion among the few Texas authorities as to which of the two theories of construction the Texas Courts follow. The Chief Justice speaks of "The Texas version of the 'complete operation' theory" but the Austin Court of Civil Appeals, in Travelers Ins. Co. v. Employers Casualty Co., Tex.Civ. App., 335 S.W.2d 235, 238, says: "We do not believe the cases follow the 'completed operations' theory, but rather the 'coming to rest' theory." Our own Court, in American Employers' Ins. Co. v. Brock, Tex.Civ. App., 215 S.W.2d 370, err. ref. n.r.e., set forth the rationale of the two theories and quoted from some of the decisions expounding each of them, but the only principle of law actually announced in that case was that, since the language of the policy provision in question was ambiguous and capable of more than one construction, the court should interpret the same liberally in favor of the insured and strictly against the insurer. It is true that in the early part of the opinion it was said that appellant contended for the application of the "coming to rest" theory, while the appellee relied upon the "complete operation" theory; the decision was in favor of the appellee; therefore it might be said that the court favored the latter theory. But, as stated above, the Austin Court says we follow the other. Which theory *do* we follow? It is difficult to say, in the absence of a definitive expression by our Supreme Court.

In the main opinion it is said that "It (Texas) adheres to the principle announced in American Employers Ins. Co. v. Brock, Tex.Civ.App., 215 S.W.2d 370, to the effect that the unloading is completed when the material being unloaded is turned over to the party to whom delivery is to be made. In this case the party was Borders, the subcontractor acting for and in behalf of the general contractor with whom Capitol had its contract." I do not read the opinion in the Brock case as being to that "effect," but that is beside the point. The point is that I am fearful that the Chief Justice has lost sight of the fact that here we are considering Borders, not Capitol, as the "insured" under the Employers policy; we are trying to determine whether Borders was "using" the ready-mixed concrete truck by unloading the same, within the terms of the policy.

If we are to follow the "complete operation" theory, and if it is correct to say that "the unloading is completed when the material being unloaded is turned over to the party to whom delivery is to be made," then it seems to me to be inescapable that in this case the unloading had not been completed when the accident happened because it had not been turned over to the general contractor, the "party to whom delivery is to be made." It will not do merely to say that the concrete was turned over to the general contractor, Collins, by being turned over to Borders who was acting for Collins, thus making the operation complete. This presupposes that Borders was in some way made the agent of Collins to receive the wet concrete from Capitol, but I find neither pleading nor testimony of any such instruction or authorization in the record or in fact anything to indicate clearly for whom Borders was acting. But even assuming that Borders was so authorized, we must not lose sight of the fact that it is Borders' alleged negligence in handling the concrete with a defective crane that was made the basis of the original claims, and that this occurred while Borders was removing the concrete from the truck to the forms. I say that in so removing the concrete Borders was actually unloading the truck.

The testimony quoted in the main opinion and in that of the Austin Court of Civil Appeals merely establishes that Capitol's

responsibility for, and its control over, the concrete ceased as soon as it left the truck; also that Capitol had no control over the crane. As I see it, these facts are wholly immaterial, for it is not Capitol's conduct which is under scrutiny here. No claim was made by anyone against Capitol. The question here is: Who unloaded the truck? Presumably Capitol's employees turned the spigot or valve which permitted the concrete to flow down the chute into the bucket; but suppose this employee had merely driven the truck to the site and said to Borders or his employee: "Here is the concrete. It will flow down the chute if you will turn that spigot." If Borders turned the spigot would anyone question that he was unloading the truck? One might reply: "No, but the unloading was completed when the concrete was loaded in the bucket." But what if instead of using the crane and bucket, Borders put the lower end of the chute into the upper end of a trough, or on a conveyor belt, leading to the forms. Could it then be properly said that the unloading was complete when it first touched the trough or belt? Or, wouldn't it be more reasonable to say that the unloading process was not complete until the concrete reached its ultimate destination? I think this would be true no matter who actually turned the spigot.

As I see it, the principle of law involved would be the same if the truck were an open-bed type of truck with the material lying in the bed of the truck and the bucket of the crane was designed to scoop up the material and carry it to the forms, instead of having the material flow down a chute into the bucket. The principle should be the same as if one of Borders' employees was standing in the open bed of the truck and throwing the material out from the truck with a shovel directly into the forms. If such a workman should scoop up a quantity of the material and hold it in his shovel a second until he determined exactly where he should deposit it, wouldn't it be just as reasonable to say that the material had "come to rest" in the shovel as to say, as the Austin Court and the main opinion of this court have said, that the material "has come to rest" when it flows down the chute into the bucket?

The facts are almost identical with those in Lamberti v. Anaco Equip. Corp., 16 A.D. 2d 121, 226 N.Y.S.2d 70, 73. There the ready-mix truck contained more concrete than enough to fill the bucket of the crane. The concrete would flow down the chute into the bucket as in this case, and the crane would carry the bucket to the forms, dump the concrete therein and return for another bucketful, and on the third trip from the truck to the forms the concrete was accidently spilled on the plaintiff, injuring him. The question involved in that case was, as it is here, whether the operators of the crane and bucket were "using" the ready-mix truck by unloading it, thus bringing themselves under the coverage of the automobile policy issued to the owners of the ready-mix truck. The court held that they were covered, using the following language, which I think very significant in the light of the testimony quoted in the main opinion in our case:

"It is not unfair to the insurance carrier to hold that the delivery function was not complete until the concrete reached its ultimate destination. Particularly so in the case of mixed concrete where there could be no intermediate place of sojourn. By the very nature of that material it is essential that it be taken directly from the delivery truck to the place at which it becomes a permanent portion of the construction. Concrete, unlike lumber or other building materials, cannot be stored at the job site for later incorporation into the structure. It must be deposited immediately at its permanent resting place. It is for that very reason that a transit-mix truck is used in this type of operation. If it were the intention of the insurer to confine its liability to a more circumscribed aspect of the loading process,

language appropriate to such end could have been employed."

In another place in the same opinion we find this language: "The sole test is whether the means used was in the process of unloading. In this case the bucket was merely an instrument to effect the unloading."

It seems to me that the facts of the Lamberti case are so like those in this case, and the logic of the Lamberti opinion so reasonable and sound, that it should be followed in this case, making it unnecessary to base the holding, as we did in the Brock case, upon the principle that the language in question is ambiguous and should be construed strictly against the insurer, which principle of construction should be employed as a last resort. But if need be in this case, that principle could easily be employed to reach the same result as reached in the Lamberti case.

We used the principle in the Brock case to establish coverage under a similar clause, and in that case nothing had been either loaded onto the truck or unloaded off of it at the time of the accident. Why should it not be used in this case, where the accident occurred during the process of removing the material from the truck to the forms?

If it is now proper to say there is no coverage or liability because the unloading had been completed when the accident occurred, we should have said in the Brock case there is no coverage or liability because the loading had not commenced when the accident occurred.

It seems to me that appellee would be liable under either of the two theories. It was not a "complete operation" when the concrete was first placed in the bucket, or until it reached "its permanent resting place." Moreover, there was no "coming to rest" until that time, for a material which cannot be stockpiled, even temporarily, but must be kept in a constant state of agitation until it reaches its final resting place in the permanent structure of which it is to be a part, cannot properly be said

to have "come to rest" in the bucket which is to transport it away from the truck as soon as it is filled. I cannot agree to the conclusion that the unloading was completed as soon as the concrete left the confines of the truck.

(3) In the main opinion it is pointed out that "it was a defect in Borders' crane which caused the accident, not anything done in the unloading of Capitol's truck," but I submit that this begs the question, which is: Does appellee's policy insure Borders against liability for its negligence? The type of negligence is immaterial. If Borders was engaged in unloading the concrete truck when the accident occurred the causal connection is clearly established.

(4) The main opinion speaks of our duty to uphold "the implied finding of the trial court that Capitol's unloading process had been completed when the accident occurred," but as pointed out above, we are not here concerned with Capitol's unloading process, but with Borders' unloading process. Moreover, the "implied finding" is not of a fact, but a conclusion of law which controls the entire case.

In conclusion, I do not have any way of knowing what the intent of the parties to this insurance contract was except by the language used in the policy. There are numerous other out-of-state cases which I think are quite persuasive, such as Wagman v. American Fidelity & Casualty Co. (NY), 304 N.Y. 490, 109 N.E.2d 592, which seems to be a leading case on which the court in the Lamberti case strongly relied; also Pacific Auto. Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 510, 161 P.2d 423, 160 A.L.R. 1251, wherein the Utah court said this: "Normally a delivery is not completed until the deliveror has finished his handling of the article, has completed his assignment or task of putting the articles into the possession of the receiving party." In our case, the general contractor, M. Z. Collins Construction Company, is the "receiving party" and Borders is the "deliveror."