SHELBY COUNTY TRUST & BANKING CO. et al. v. SECURITY INS. CO. OF NEW HAVEN, CONN.

No. 6269.

Circuit Court of Appeals, Sixth Circuit.

June 30, 1933.

the hazard be increased by any means within the control or knowledge of the insured." To the policy was attached the National Board standard mortgage clause, to the effect that loss, if any, should be payable to the Shelby County Trust & Banking Company, as mortgagee (or trustee), as such interest may appear, and the Consolidated Realty Company, guarantor of the bonds; and that as to the interest therein of the mortgagee or trustee, the policy "shall not be invalidated by any act or neglect of the mortgagor or owner * * * nor by any increase of hazard." This mortgage clause also provided that "on payment to such mortgagee (or trustee) of any sum for loss or damage hereunder, if this company shall claim that as to the mortgagor or owner no liability existed, it shall to the extent of such payment be subrogated to the mortgagee's (or trustee's) right of recovery and claim upon the collateral to the mortgage debt. * * *"

The premises were subsequently rented for the storage of bales of rags removed from a warehouse in which a fire had previously occurred. These rags had been wet at the time of that fire and the evidence is clear and convincing that thereby the danger of heating, and of spontaneous combustion, was greatly increased. This was an increase of the fire hazard, within control and knowledge of the insured, under the policy provision. These facts having come to the knowledge of the appellee, that company wired its agents to "cancel" the policy "immediately." This telegram was confirmed by a letter in which the reason for the action was stated and the agents were instructed to "take up this policy at once, relieving us of all liability." This telegram and letter were shown to the president of the realty company, the owner and insured, and in addition to this the insurer's state agent personally informed the vice president of the realty company that such occupancy was unacceptable to his company on account of the increased hazard and that the insurance could not be continued.

A fire occurred and the loss was suffered, through spontaneous combustion of the rags in question, within five days of the events last above stated and the appellant owner contends that the notice given by the insurer constituted an election to "cancel" the policy under the so-called cancellation clause, which automatically kept it in force for five days, and that if any right existed to declare a forfeiture of the policy at that time, because of the increased hazard, that right was waived by the election to cancel. The Dis-

David R. Castleman, of Louisville, Ky. (R. F. Matthews, of Shelbyville, Ky., on the brief), for appellants.

F. M. Drake, of Louisville, Ky., for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The present controversy arises under a policy of fire insurance issued by the appellee upon a vacant warehouse, the property of the Consolidated Realty Company. This policy contained the provision that it "shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation." It also provided: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if

trict Court held to the contrary, the appellee paid its proportionate share of the loss suffered by the mortgagee, which liability was admitted, in a subsequent proceeding the court declared the insurer's right to subrogation to the security held by the mortgagee, and the present appeal followed.

██ We see no sound reason for the complexity of argument in which counsel for appellant has indulged. Like all other business contracts, the policy here involved "must be construed with business sense." The Kronprinzessin Cecilie, 244 U. S. 12, 24, 37 S. Ct. 490, 492, 61 L. Ed. 960; Erie R. Co. v. Ohio Public Service Co., 62 F.(2d) 83 (C. C. A. 6). Compare, also, the principles of construction announced in Fidelity & Columbia Trust Co. v. Lucas (C. C. A.) 66 F.(2d) 116. Applying these principles, we think that it is quite evident that the word "cancelled" appearing in the "cancellation clause" was used in the sense of "rescinded." The policy thus provided that rescission might be effected by either party even without cause for forfeiture. On the other hand, the instructions of the appellee to its agents to cancel the policy immediately could have conveyed no other meaning than that they at once transmit to the insured notice of intent on the part of the insurer to declare the policy void by reason of the increased hazard. This notice, when transmitted, assuming that it rested upon sufficient ground, was but a courtesy extended by the insurer to the insured, affording the insured an opportunity to remove the cause for forfeiture, or to secure other insurance, and constituting emphatic expression of the intent to regard the policy as null and void if and while the increased hazard remained.

██ So considered, we see no inconsistency between the cancellation clause and the declaration of forfeiture in the present case, and we find no waiver. Waiver is a matter either of intent or of estoppel by inconsistent action, and the facts of the present case completely negative any idea of an election to cancel under the special "cancellation clause," with the attending continuation of the policy in effect for five days, rather than the immediate termination of possible liability, under the forfeiture clause. Compare Ruffner Bros. v. Dutchess Insurance Co., 59 W. Va. 432, 53 S. E. 943, 115 Am. St. Rep. 924, 8 Ann. Cas. 866; Burlew v. Fidelity & Casualty Co. of New York, 64 F.(2d) 976 (C. C. A. 6), decided May 12, 1933.

██ Nor do we find error in the decree of the District Court awarding subrogation to the insured. After termination of liability to the owner upon the policy, as above indicated, the situation was as if the appellee had issued its policy solely for the protection of the mortgagee or trustee for bondholders. This contract specifically provided that on payment to such mortgagee of any sum for loss or damage under the policy, to the extent of such payment the insurer should be subrogated to the mortgagee's right of recovery and claim upon the collateral to the mortgage debt. The property had been sold pending the supplemental proceedings to secure subrogation and the court allowed to the mortgagee the expenses incident to such sale, substituting the purchase money notes held by the mortgagee for the realty itself. The court did not allow a trustee's fee of $400 or attorneys' fees to the trustee for the prosecution of the present litigation. The contract is silent as to such fees and we are of the opinion that their allowance is inconsistent with the other express policy provisions. The mortgagee has thus received exactly the protection for which it contracted. This being so, there should be no ground for complaint.

Being of the opinion that no error was committed by the court below, the judgment in the law case and the decree in the supplemental proceedings for subrogation are both affirmed.