**ST. PAUL MERCURY INSURANCE COMPANY, Plaintiff, Appellee and Cross-Appellant,**

v.

**Dewey HUITT, individually and doing business as Dewey Huitt & Son, Russell Ontis, Ruth V. Withers, Guardian of James A. Withers, Mentally Ill, Defendants, and Auto Owners Insurance Company, Defendant and Appellant.**

Nos. 15320, 15321.

United States Court of Appeals
Sixth Circuit.

Aug. 20, 1964.

Leland D. Phelps, Grand Rapids, Mich., (Shivel, Phelps, Linsey & Strain, Grand Rapids, Mich., on the brief), for Auto Owners Ins. Co.

James E. Gould, Grand Rapids, Mich., (Mitts, Smith & Haughey, Grand Rapids, Mich., on the brief), for St. Paul Mercury Ins. Co.

Rex Orton, Allegan, Mich., Ryan, Sullivan & Hamilton, Battle Creek, Mich., for defendants.

Before McALLISTER, Circuit Judge, and BOYD and WILSON, District Judges.

FRANK W. WILSON, District Judge.

This appeal presents issues involving the interpretation and construction of casualty insurance policies. The principal issue involved is the interpretation of the often litigated "loading and unloading" clause in an automobile insurance policy. Between the lack of clarity in the wording of the loading and unloading coverage, the lack of uniformity in the decisions of the courts, and the lack of clairvoyance upon the part of both the insurance policy draftsmen and the courts in foreseeing the myriads of factual variations that can arise, the problems here to be dealt with appear to present an inexhaustible source of litigation.[1]

This lawsuit was instituted as an action for declaratory judgment. The issues were decided by the trial court upon the motion for summary judgment of the original plaintiff, a general liability insuror, and the response thereto by one of the defendants, an automobile liability insuror. Each carrier has appealed from the portion of the decision of the trial court adverse to its contentions. The following statement of facts appears undisputed in the record.

---

1. The draftsmen have now apparently attempted to narrow the field by an endorsement, promulgated by the Joint Forms Committee of the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau, to be used with most automobile policies written on or after December 1, 1963, which purports to eliminate coverage under the automobile policy for persons who may be loosely described as strangers to the truck crew.

Upon August 4, 1958, a ready-mix concrete truck owned by Benjamin G. Waanders & Son and driven by Carl Thomas, an employee, delivered a load of concrete for use in pouring the foundation of a building under construction in Allegan, Michigan. A bucket operated by a crane was used to move the concrete from the ready-mix concrete truck and pour it into the foundation. This crane was owned by Dewey Huitt, an individual doing business as Dewey Huitt & Son, a subcontractor on the job, and was operated by Russell Ontis, an employee of Huitt. During the course of unloading the truck and pouring the concrete in this manner, the boom upon the crane fell and one James A. Withers, an employee of the general contractor upon the job, was struck and injured. At the time of the accident the crane had moved a bucket of concrete from the truck to a point some distance from the truck where it was to be poured into the foundation. Neither Waanders' truck nor Waanders' employee was involved in the accident in the sense of having proximately caused or contributed to the accident.

At the time of the accident, Huitt was insured by St. Paul Mercury Insurance Company under a multiple coverage policy commonly known as a general liability policy and having maximum limits of $25,000 for each person injured. The Waanders truck was insured by Auto Owners Insurance Company under an automobile liability policy having maximum limits of $100,000 for each person injured. The relevant portions of the respective policies are admitted in the record.

A suit for $200,000 damages for personal injuries was instituted in the state court upon behalf of James A. Withers by Ruth V. Withers, acting as his guardian. The suit was against Huitt, the owner of the crane, Ontis, the crane operator, and the Clark Equipment Company, the manufacturer of the crane. Upon the institution of this lawsuit, Huitt and Ontis each called upon Auto Owners Insurance Company to extend to them coverage under the Waanders automobile liability policy and to undertake their defense, contending that they were each an insured under the loading and unloading provisions of the policy. Auto Owners declined to do so.

Following this, St. Paul, as the general liability carrier upon Huitt, instituted this suit under 28 U.S.C. § 2201, alleging diversity, joining Huitt, Ontis, Mrs. Withers, guardian of James A. Withers, and Auto Owners as defendants, and seeking a declaratory judgment of the rights and liabilities of the respective parties under the above stated insurance policies. After answer was filed on behalf of each defendant, St. Paul moved for a summary judgment upon the basis of the pleadings, the admissions and the affidavits of record. By way of response, Auto Owners filed counter-affidavits disputing the plaintiff's affidavits only with reference to the inferences and conclusions to be drawn from the facts as stated above. No further response to the motion for summary judgment was filed by any other defendant.

Upon this state of the record the trial court entered an opinion, stating that it was sustaining in part and denying in part the motion for summary judgment and holding that Auto Owners had primary coverage upon Huitt and Ontis by reason of the loading and unloading provision of its policy, that St. Paul had excess coverage upon both Huitt and Ontis by reason of its policy, but declining to rule as to which carrier had the duty to defend.[2]

Auto Owners has filed an appeal from the action of the trial court in decreeing that Huitt and Ontis were insureds under its policy. It is the contention of Auto Owners that the operation of the Huitt crane could not be considered an insured use under the loading and unloading provision of Auto Owners' policy upon the Waanders truck and that, in any event, this issue cannot be decided upon a motion for summary judgment as issues of

2. St. Paul Mercury Insurance Co. v. Huitt, D.C., 215 F.Supp. 709 (1963).

fact exist as to whether the truck was unloading and as to whether any causal connection exists between the injury and the unloading of the truck. St. Paul has filed a cross-appeal from the action of the trial court in decreeing that Ontis was an insured under its policy and as such would be entitled to excess coverage along with Huitt. St. Paul also complains of the action of the trial court in declining to determine which insurance carrier must provide the defense for Huitt and Ontis.

With respect to the contention of Auto Owners that unresolved issues of fact exist in the case, this Court is of the opinion that this contention is without merit. The facts with reference to the existence and terms of the insurance policies involved, the operations conducted, the equipment and parties involved in the unloading of the concrete truck and in the movement of the concrete, the manner and means by which injuries were inflicted, and the state of the operations at which they were inflicted, as well as the existence of the lawsuit upon behalf of the injured claimant are all undisputed. The alleged issues of fact asserted by Auto Owners as to (a) whether the truck was in the process of unloading, (b) whether the unloading was completed before the infliction of injuries, and (c) whether any causal connection existed between the unloading and the injuries are in reality conclusions of law that must be drawn from the undisputed facts. The issues presented upon the motion for summary judgment were solely matters of the interpretation of the subject insurance policies in light of the undisputed facts. As stated in Couch On Insurance, 2d, Sec. 15.3:

"As a general rule, the construction and effect of a written contract of insurance is a matter of law to be determined by the court and not by the jury where there is no occasion to resort to extrinsic evidence for the purpose of resolving ambiguities. The construction of a particular word in a policy is for the court where its meaning is not dependent upon disputed facts. If the facts are admitted, it is the province of the court to determine whether they come within clear and unambiguous terms of the policy."

The Auto Owners policy contains the usual insuring clauses for an automobile liability insurance policy. With reference to whether Huitt and Ontis are insured under the terms of this policy, the pertinent language, reduced to its essence, is as follows:

"To pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury * * * arising out of the ownership, maintenance or use of the automobile.

\* \* \* \* \* \*

"The unqualified word 'assured' * * * includes not only the named assured but also any person while using the automobile and any person or organization legally responsible for the use thereof provided the actual use of the automobile is with the permission of the named assured. * * *

\* \* \* \* \* \*

"* * * Use of the automobile for the purposes stated includes the loading and unloading thereof."

In determining whether Huitt and Ontis fall within the definition of "the assured," it is apparent that a determination must be made as to whether their actions were within the ambit of the use of the insured vehicle with the express or implied permission of the named assured in the unloading thereof. If their actions were encompassed within the meaning of the term "unloading" and their participation was with the express or implied permission of the named insured, i. e., Waanders, then they would acquire the rights of an assured under the policy.

In determining the meaning and scope of the words "loading and unloading," the courts have not spoken with

one voice. See annotations 160 A.L.R. 1259 and 95 A.L.R.2d 1114. Two principal rules of interpretation have developed in the cases, one being called the "coming to rest" rule and the other being called the "complete operation" rule. See Risjord, "Loading and Unloading," 13 Vanderbilt L.Rev. 903. The "coming to rest" rule essentially interprets loading as beginning only after the object to be transported has come into the immediate vicinity of the insured vehicle and unloading to cease when the object transported first comes to immediate rest upon removal from the vehicle. This was the early and now clearly the minority rule. Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629 (1937); Jackson Floor Covering, Inc. v. Maryland Casualty Co., 117 N.J.L. 401, 189 A. 84 (1937); Franklin Co-Op Creamery Association v. Employers' Liability Assurance Corp., 200 Minn. 230, 273 N.W. 809 (1937).

■ The "complete operation" rule essentially interprets loading as beginning when the object to be transported leaves its original location and starts toward the insured vehicle for the purpose of loading, and unloading to cease when the object transported reaches its final point of delivery toward which the transportation by the insured vehicle was directed. State ex rel. Butte Brewing Co. v. District Court, 110 Mont. 250, 100 P.2d 932 (1940); Bobier v. National Casualty Co., 143 Ohio St. 215, 54 N.E.2d 798 (1944); Maryland Casualty Co. v. Tighe, 9 Cir., 115 F.2d 297; Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490, 109 N.E.2d 592 (1952); Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716 (1954).

■ ■ The contract for insurance in the present case having apparently been issued in Michigan and jurisdiction being here based upon diversity, the Court must look to the law of the State of Michigan to determine the appropriate rule to follow in the interpretation of the loading and unloading clause in this contract. In the absence of a precedent in the state courts, the Federal District Courts in Michigan are committed to the "complete operation" rule. Allstate Ins. Co. v. Valdez, 190 F.Supp. 893 (E.D. Mich., 1961); Selective Ins. Co. v. Hartford Accident & Indemnity Co., 213 F. Supp. 3 (E.D.Mich., 1963).

■ It is readily apparent under the facts of the instant case that the final point of delivery of the concrete was the foundation where it was to be poured at the construction site, not the bucket attached to the crane. Defining the word "unloading" in terms of the complete operation of unloading the concrete from the concrete truck and moving it to its final point of delivery in the foundation, the use of the crane and bucket would be a part of the complete operation and the crane operator and his employer would each be an "assured" as defined in the policy. That Huitt and Ontis were strangers to Waanders, the named insured, would not be significant, since Auto Owners expressly insured against liability arising out of the unloading, without regard to who was doing the unloading. No claim is made that the truck was being unloaded without the permission of the named insured.

■ We are of the opinion that the District Court was correct in its application of the Michigan complete operations rule to the facts of this case and in holding that Ontis was unloading the Waanders truck at the time of the accident and within the meaning of the word "unloading" as used in the automobile liability policy. Courts from other jurisdictions following the complete operation rule have imposed liability upon the automobile liability carrier under somewhat analogous circumstances. In Bituminous Casualty Corp. v. Travelers Ins. Co., D.C., 122 F.Supp. 197, the Court extended coverage to a power shovel operator engaged in loading the insured vehicle. In Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 (1962), the Court extended coverage to a crane operator who dropped concrete upon the driver of the insured truck

while engaged in unloading the concrete. In Indemnity Ins. Co. of North America v. Old Dominion Hoist Service, 102 U.S.App.D.C. 141, 251 F.2d 382 (1958) the Court extended coverage to a crane operator when a workman was electrocuted as a result of the crane coming into contact with the power line after lifting a steel beam from the insured vehicle and while moving the beam to its position in the new structure. See also Kemnetz v. Galluzzo, 8 Misc.2d 513, 163 N.Y.S.2d 998, involving a payloader used in the process of unloading the insured truck.

Auto Owners relies principally upon the case of Travelers Ins. Co. v. Buckeye Union Casualty Co., 172 Ohio St. 507, 178 N.E.2d 792, 95 A.L.R.2d 1114 (1961). That case involved an injury inflicted upon the driver of the insured oil tank truck during the preparations for loading it at a bulk oil station. The driver was caused to fall from the truck when residue oil spilled upon him from the overhead loading line as it was being swung into position in preparation for loading the truck. The trial court held that the loading of oil begins only when the flow in the hose or pipe begins. The appellate court held that where the injury was caused by a third party having no legal relationship to the named insured, there was no permissive use until a particular use of the vehicle gave on opportunity for the named insured to acquiesce in or refuse its use. To the extent that the case may be construed as a departure from the complete operation rule followed in Michigan, it would not be persuasive in this case. To the extent that it would impose special restrictions upon persons not bearing a legal relationship to the named insured not otherwise imposed upon persons that might come within the omnibus coverage, the Court there appears to have read conditions into the definition of the insured not contained in the policy. The policy, in defining "the insured," makes no distinction between employees of the named insured and strangers to the named insured, stating only that "the insured" includes "any person" while loading or unloading the insured vehicle with the permission of the named insured.

 It is the further contention of Auto Owners that before coverage would be extended there must appear a causal relationship between the accident and the use of the insured vehicle as a vehicle. The case of Pacific Auto Ins. Co. v. Commercial Casualty Co. (1945) 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251, is cited as so holding. It must be borne in mind that in construing the language of the policy we are not dealing with the problem of proximate cause of the accident. The question is not one in the field of torts of proximate cause of the accident, but one in the field of contracts of coverage under the wording of an insurance contract. While there must be a causal relationship between the insured use, that is unloading, and the accident,[3] the question is not whether the insured truck was the cause of the accident. As stated in the case of Federal Ins. Co. v. Michigan Mutual Liability Co., 277 F.2d 442 (C.C.A. 3, 1960), where a somewhat similar contention was made by the automobile liability insurance carrier to the claim of coverage under the loading and unloading clause by a crane operator:

> "Appellant confuses the basis for finding liability for the purpose of recovery with the basis for finding the extent of coverage of the insurance contract."

Turning now to the issues raised in the cross-appeal by St. Paul, the trial court

---

3. See Handley v. Oakley, 10 Wash.2d 396, 116 P.2d 833 (1941), where a customer making a purchase at the insured ice cream truck at a ball game was struck by a baseball; and Hartford A. & I. Co. v. Fireman's Fund Indemnity Co., 298 F.2d 423 (C.C.A.7, 1962), where a bottled gas deliveryman, after making delivery to one location, opened a valve on a tank at another location, thereby causing an explosion.

held that St. Paul under its general liability insurance coverage would have excess coverage upon both Huitt, the named insured, and Ontis, his employee. No issue exists with regard to St. Paul's coverage being excess to the coverage here found to be imposed upon Auto Owners, but an issue is raised by St. Paul as to the employee Ontis being insured under its policy. In determining whether an employee of the named insured is an insured under the general liability policy, the relevant language of the policy, reduced to its essence, is as follows:

"The Company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person.

"The unqualified word 'insured' includes not only the named insured but also * * * any executive officer, director or stockholder thereof while acting within the scope of his duties as such. * * * If the named insured is an individual, this insuring agreement applies only in connection with the conduct of a business of which the named insured is sole owner. * * *"

The trial court held that the last sentence quoted above was sufficient to make Ontis, the employee, an insured, as he was employed in a business in which the named insured was sole owner. In this we believe the trial court misconstrued the language of the policy and was in error. The omnibus coverage is defined in the phrase "any executive officer, director or stockholder thereof while acting within the scope of his duties as such." The sentence limiting coverage where the named insured is an individual solely to the business of which he is the sole owner does not broaden the omnibus coverage, but further restricts it. Bituminous Casualty Corp. v. American F. & C. Co., 22 Ill.App.2d 26, 159 N.E.2d 7 (1959); Fidelity Ins. Co. v. Michigan Mutual Liability Co., 277 F.2d 442 (C.C.A. 3, 1960).

Finally, St. Paul complains of the action of the District Court in deciding that both St. Paul and Auto Owners are obligated to provide a defense for Huitt and Ontis. This Court having determined that Ontis is not an additional insured under the St. Paul policy, the decision of the trial court has been modified to that extent. We are of the opinion that the trial court was correct, however, in holding that Huitt was entitled to be provided with a defense by both Auto Owners and St. Paul. The obligation to defend is separate and distinct from the duty to provide coverage and to pay. West American Ins. Co. v. Allstate Ins. Co. (C.C.A. 10, 1961) 295 F.2d 513; United States F. & G. Co. v. Tri-State Ins. Co. (C.C.A. 10, 1960), 285 F.2d 579; 8 Appleman Insurance Law and Practice, Sec. 4685. This is a contractual right of the insured irrespective of other insurance and irrespective of primary or excess coverage. American F. & C. Co. v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co. (C.C.A. 5, 1960), 280 F.2d 453. The controversy between the two insurance carriers who have no contractual relationship to each other cannot operate to alter the obligation that each owes unto the insured, with whom they each have a contract. With regard to the providing of a defense, Huitt has double insurance and may call upon either or both carriers to fulfil their policy obligations in this respect. Whether after fulfilment of their contractual obligations to defend the insurance carriers may have some right of contribution as between themselves was not ruled upon by the trial court. The trial court having exercised its discretion that declaratory relief was not appropriate upon this speculative issue, we see no cause to disturb that exercise of discretion. 16 Am.Jur., "Declaratory Judgments," Sec. 14.

The judgment of the District Court is accordingly affirmed except insofar as it held Russell Ontis to be an insured under the St. Paul Mercury Insurance Com-

pany policy, and the judgment is reversed to that extent only.

McALLISTER, Senior Circuit Judge (dissenting).

I cheerfully acknowledge the learning, research, and persuasiveness of Judge Wilson's opinion, and regret that I cannot concur in his able disposition of the issues. To express the reasons why I am not in agreement, I submit the following as my view of the case.

The Auto Owners Insurance Company policy obligated that company to pay, on behalf of Ben Waanders & Son, the owners of a ready-mixed concrete truck, all sums which Waanders Company should be obliged to pay by reason of the liability imposed upon Waanders, by law, for damages because of bodily injury arising out of the use, including the loading and unloading, of the ready-mixed concrete truck. The policy also provided that such insurance covered not only Waanders but also any person while using the truck, provided the actual use of the truck was with Waanders' permission.

On August 4, 1958, the Waanders truck, with a load of concrete, was driven to the site of a building under construction in Allegan, Michigan. There it stood, in a place of safety, near a foundation wall which was being constructed, while waiting to pour concrete into a bucket of a crane. Some twenty feet from the ready-mix truck was the crane with a bucket attached, which was operated by the subcontractor, herein called Huitt. Huitt had no contractual relationship with Waanders, the owner of the ready-mixed concrete truck. The Huitt crane, with bucket attached, was thereafter used in receiving the cement poured from the Waanders truck, and then transporting it to the foundation which was being built.

This case largely involves two insurance companies, one insuring Waanders in the amount of $100,000, and one insuring Huitt in the amount of $25,000, al-

though each of the insured parties conceivably might be held in damages over and above the amounts of their respective insurance policies.

The Waanders truck and the Huitt crane were being operated independently of each other. One was under the control of Waanders; the other, under the control of Huitt.[1]

On the day of the accident, the Waanders truck, operated by his employee, deposited concrete in the bucket of the Huitt crane. While the crane was being thereafter operated by Huitt, and carrying concrete, the boom of the crane collapsed and fell, striking Withers, a third party, and causing serious injuries.

The District Court held that Waanders' insurer, Auto Owners Insurance Company, was liable to Huitt, because Huitt was covered under the loading and unloading provisions of Waanders' policy. That policy, as above mentioned, obligated Auto Owners to pay on behalf of Waanders, the assured, all sums he should be obligated to pay by reason of bodily injury arising out of the use, including the loading and unloading, of the ready-mixed concrete truck. The policy further provided that the word "assured" included not only Waanders but also any person while using the automobile (truck), provided that the actual use of the truck was with the permission of Waanders. The District Court based its holding that Auto Owners became the insurer of Huitt, under the "loading and unloading" provision of Waanders' policy, on the ground that Huitt was a "user"—using Waanders' truck in unloading the cement, and therefore was an insured; and the court therefore determined that Waanders was liable under his insurance policy for any negligence of Huitt, after Huitt had removed the concrete from the truck, and until Huitt had finally delivered the concrete to the point where he had been instructed by the general contractor to deliver it. The District Court concluded: "The Court is satisfied and

1. The name "Waanders," as hereinafter used, includes the employees of that company, and the name "Huitt" includes the employee of that company.

it therefore concludes that the better reasoning in the case leads us to find that Ontis [the employe of Huitt] and Huitt were 'users' and therefore 'insureds' under the Auto Owners policy."

Appellant Auto Owners contends that Huitt was not a "user" of the Waanders' truck; that there was no actual use, by Huitt, of the truck with the permission of Waanders; that there was no use of the truck by Huitt while unloading the cement; that there was no causal relationship or connection between the accident and the use of the insured truck as a truck; and that therefore Huitt is not covered by the terms of the Auto Owners Insurance Company policy. Appellant emphasizes that Waanders' insurance provided that its coverage included "any person while using the automobile [the ready-mixed concrete truck] and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of [Waanders]. * * * Use of the automobile * * * includes the loading and unloading thereof." It insists that as far as Waanders was concerned, the deposit of the concrete in the Huitt bucket constituted its final point of delivery; that there was no obligation on Waanders to do more than deliver the concrete to the Huitt bucket; that what Huitt did by his own operation of the crane, after he had received the deposit of concrete in the bucket, was of no concern to Waanders.

On the other hand, it is claimed by appellee that at the time of the accident, when the Huitt crane with the bucket filled with concrete fell on James Withers, Huitt was using the Waanders truck, since Huitt was engaged in unloading it. Therefore, it is claimed by Huitt that he is covered by Waanders' insurance, since Huitt was using a Waanders automobile —that he "was making a 'particular use' of the insured's truck. He was actually unloading it, and was to continue to unload it until it was empty."

In determining the scope of the "loading and unloading" clause, each case must be treated separately, according to the facts involved, and, as Judge Wilson points out in the accompaning opinion, the problems to be dealt with in interpreting "loading and unloading" coverage appear to present an inexhaustible source of litigation.

"No reported Michigan decision has outlined the scope of coverage under a 'loading and unloading' provision." Allstate Insurance Company v. Valdez, 190 F.Supp. 893, 895 (D.C.E.D.Mich.). Accordingly, construction of the contract for insurance in the present case, which was made in Michigan, is not aided or clarified by any adjudication of the Supreme Court of Michigan.

As to whether the "coming to rest" doctrine, or the "complete operation" doctrine, so ably discussed in the accompanying opinion, here applies, it can be assumed that the "complete operation" doctrine—as that doctrine may be interpreted in the light of the facts of this case— governs our determination. How much this helps in arriving at a proper construction of the contract before us, is a question. The interpretation given by some courts to a "loading" provision in a policy of casualty insurance is often contrary to that given by other courts; and the same applies to "unloading" provisions. Courts that adopt the "complete operation" doctrine differ as to what "complete operation" means. Even on the same court, where some judges hold that their colleagues are following the "coming to rest" doctrine, their colleagues insist that they are following the "complete operation" doctrine. In spite of the multitudinous discussions in various adjudications as to whether a case is decided according to the "complete operation" doctrine, or the "coming to rest" doctrine, it is probably the part of wisdom to determine the coverage of a "loading and unloading" clause according to the factual situation in each case. When one doctrine and its contrary doctrine become so indefinite in the minds of the judges that courts so frequently differ as to whether a case is governed by the one or the other, the sensible course to follow, in construing an agreement—and

the course sanctioned by the law as a rule of construction—is to seek interpretation of the terms of the contract in the light of the surrounding facts peculiar to it, and in accordance with the intent of the parties.

The determination of this case, then, depends upon the construction to be given to the contract, or policy of insurance. The general rule of construction to be given to insurance policies is that the terms of the policy are to be taken and understood in their ordinary sense and the policy must receive a practical, reasonable, fair, and sensible interpretation consonant with the apparent object and plain intent of the parties. Abady v. Hanover Fire Insurance Company, 266 F.2d 362 (C.A.4); Sulzbacher v. Travelers Ins. Co., 137 F.2d 386 (C.C.A.8); Hemenway v. American Cas. Co., 215 F. Supp. 103 (D.C.La.). Further, it is to be given a construction such as would be given the contract by an ordinary, intelligent businessman. Neel v. Mutual Life Ins. Co. of New York, 131 F.2d 159 (C.C.A.2); Shelby County Trust & Banking Co. v. Security Ins. Co., 66 F.2d 120 (C.A.6); and not a strained or forced construction. Stipcich v. Metropolitan Life Ins. Company, 277 U.S. 311, 48 S. Ct. 512, 72 L.Ed. 895; Standard Acc. Ins. Co. of Detroit, Mich. v. Winget, 197 F.2d 97, 34 A.L.R.2d 250 (C.A.9); St. Paul-Mercury Indemnity Co. v. Rutland, 225 F.2d 689 (C.A.5).

In construing a policy insuring a truck owner against liability for damage arising out of the use of his truck, including loading and unloading, the mission or transaction or function being performed by the insured's employees at the time of the accident is the controlling element in determining whether the situation from which the accident occurred is included in loading and unloading; and "[there] must be some causal relationship between the use of the insured vehicle as a vehicle and the accident for which recovery is sought." Pacific Auto Insurance Co. v. Commercial Casualty Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251.

It is argued by appellant that Waanders made a complete delivery of the concrete to Huitt when Waanders poured the concrete into the Huitt bucket attached to the crane, and that, since Huitt was an independent contractor over whom Waanders had no control, Waanders was not concerned with anything that Huitt afterward did with the bucket of concrete, until Waanders again loaded the next bucket for delivery by Huitt to the job. Further, it is contended that Huitt was not in any way connected with the Waanders truck, and had no legal relationship to Waanders.

In Travelers Ins. Co. v. Buckeye Union Casualty Co., 172 Ohio St. 507, 178 N.E. 2d 792, 95 A.L.R.2d 1114, the court said that "where an injury is caused by * * a third party who is not connected with the truck, who has no legal relationship to the named insured and who under normal circumstances would not be *using* the truck of the named insured, it must first appear, before the liability provisions of the policy become applicable, that such third party was in the actual *use* of the truck at the time of the injury, with the express or implied permission of the named insured." (Emphasis supplied.)

In criticism of the foregoing statement or rule, in the Travelers Insurance case, it is said that the court appeared to have read conditions into the definition of "the insured" not contained in the policy, since the policy, in defining "the insured" makes no distinction between employees of the named insured and strangers to the named insured, stating only that "the insured" includes "any person" while loading or unloading the insured vehicle with the permission of the named insured. However, the policy did not go so far as to provide that "the insured" included "any person while loading or unloading the insured vehicle." Rather, the policy provided that "the insured" included "any person while *using* the automobile with the permission of the named insured," and that such *use* of the automobile by anyone with the permission of the named insured included

the use of the automobile for "loading and unloading."

It seems clear that the court in the Travelers Insurance case, above cited, did make a distinction, as stated in the accompanying opinion, between employees of the named insured and "any person while loading or unloading." But it appears that the provisions of the policy justified such distinction, since, in addition to the named insured, the policy insured any person who was *using* the vehicle for loading and unloading with the permission of the insured—and did not insure "any person while loading or unloading the vehicle." This was obviously the court's reason for saying that "where an injury is caused by * * * a third party who is not connected with the truck, who has no legal relationship to the named insured, and who under normal circumstances would not be *using* the truck of the named insured, it must first appear, before the liability provisions of the policy become applicable, that such third party was in the actual *use* of the truck at the time of the injury * * *." (Emphasis supplied.) The vital point in the court's construction of the policy depended upon the *use* by a third person in loading and unloading, and its holding that it must appear, before liability attached, that such person was *in actual use* of the truck at the time of the injury.

This was emphasized by the District Court in the instant case. That court did not hold that appellant was liable under the policy on the ground that "the insured" included any person *while loading or unloading* the vehicle. Rather, the District Court specifically found that Huitt, the owner of the crane, and his driver, were *"users"* under the "loading and unloading" clause, and therefore "insureds." Under the Travelers Insurance case, above cited, and, presumably, under the decision of the District Court, the fact that the injury occurred while "unloading" the insured truck did not result in a holding that a third party was thereby insured against any injuries occurring *while unloading*. The third party was insured only if he was *using* the truck

while unloading; and the Travelers Insurance case defined what was meant by the words "using the truck while unloading." It meant that the third party in such a case, who was not connected with the truck and had no legal relationship to the named insured, and who under normal circumstances would not be *using* the truck, must be shown to be *in the actual use of the truck* at the time of injury with the permission of the named insured. As the court said: "Where third parties are involved, it cannot be validly claimed that mutual acquiescence constitutes permissive use until some particular use of the truck appears which may be the subject of acquiescence." The court further said that "using" and "actual use" cannot be extended beyond what may reasonably be implied from the circumstances of the case or the relationship of the parties, and that where third parties are involved, they must be shown to be in the actual use of the truck at the time of the injury before the liability provisions of the policy become applicable. The court went on to say that it was fair to assume that the owner of a tank truck paid premiums to his insurance company for his own protection, and it reasonably follows that a strong "symptom of use" would appear when the third party performed some act relating to the truck for the benefit of such owner.

From the foregoing, it seems to follow that when a third party was not performing some act relating to the truck for the benefit of its owner, then it must be shown that he was in the actual use of the truck with the permission of the owner at the time of the injury.

In Bituminous Cas. Corp. v. Travelers Ins. Co., 122 F.Supp. 197 (D.C.Minn.), the court was called upon to pass on the usual "loading and unloading" clause, similar to that in the instant case, as well as upon the "using" of an insured truck by a third party for loading purposes. The facts were that the operator of a power shovel was engaged in loading the insured truck with lime. Williams, the truck driver, had to screen the lime so

that it would be of a required fineness. A screen, therefore, was placed on top of the truck box and Williams stood on the top of the box of the truck with a hand shovel so that he could check the screening of the lime and shovel out the chunks that were too large to pass through the screen.

While loading the lime onto the truck, the operator of the power shovel in some way lost control, and the shovel swung and struck Williams, thereby injuring him.

The court held that the operator of the power shovel was "using" the Williams truck for loading at the time of the accident, and was an insured within the meaning of the express terms of the policy. It might be observed that the court in the Travelers Insurance case could well have arrived at the same result as did the court in Bituminous Casualty Corp., supra, on the ground that the power-shovel operator, in loading the lime upon the truck so that it could be screened by the driver, was performing an act relating to the truck for the benefit of its owner, and, in the language of the Travelers Insurance case, this was a strong "symptom of use" of the truck by the operator of the power shovel.

We do not see why Travelers Ins. Co. v. Buckeye Union Casualty Co., supra, should not be followed in the instant case. The insurance policy, before us, provided that it included the named insured, and "any person while using the automobile, provided the *actual use* * * * is with the permission of the named assured." (Emphasis supplied.) The Travelers Insurance Co. case held that when the injury was caused by a third party who was not connected with the truck, who had no legal relationship with the named insured, and who, under normal circumstances, would not be using the truck of the named insured, it must appear that such third party was in the *actual use* of the truck at the time of the injury, with the express or implied permission of the named insured. Appellee Huitt claims that he was in the *actual use* of the insured truck. He relies upon his contention that he was a "user" of the truck, as the District Court found. In the Travelers Insurance case, it is further said that where third parties are involved, it cannot be validly claimed that mutual acquiescence constitutes permissive use until some *"particular use"* of the truck appears, which may be the subject of acquiescence. Appellee appears to agree with this statement of the rule, and submits that Huitt was "making a 'particular use' of the insured's truck," since he was actually unloading it. The contentions of appellee appear, then, to be directed to bringing its case directly under the rule announced in Travelers Ins. Co. v. Buckeye Union Casualty Co., supra—and it seems a useless quest to attempt further distinction among the cases, in the light of appellee's contentions. We are, accordingly, brought to the point of ascertaining what bearing the words, "user," "actual use," "particular use,"—as they may be properly interpreted—may have upon the adjudication of this case, all of which is discussed in a subsequent part of this opinion.

We pass, then, to the question of "unloading" and "delivery" in the present case.

Under the "complete operation" doctrine, it is held that coverage by virtue of the "loading and unloading" clause in an automobile liability insurance policy continues until the goods, which were transported in the vehicle, reached the place at which they are being delivered. "Unloading" under the complete operation doctrine ceases when the material is removed from the truck by the insured, his agent, or employees, and, as part of the continuing operation, is delivered to the customer or the place at which it is being delivered. Bobier v. National Casualty Co., 143 Ohio St. 215, 54 N.E.2d 798; Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251; Wagman v. American Fidelity and Casualty Co., 304 N.Y. 490, 109 N.E.2d 592.

The policy with which we are concerned in the instant case was a policy providing the owner with insurance against injury to third persons, commonly known as public liability insurance. It was protection to the insured against liability for damages because of bodily injury, sickness, or disease, including death, sustained by any person, other than the assured, arising out of the ownership and maintenance of the truck and the use thereof, including loading and unloading.

There has been a plethora of cases interpreting "loading and unloading" clauses under automobile liability insurance policies, and discussing the "coming to rest" doctrine and the "complete operation" doctrine considered applicable thereto. See annotations in 160 A.L.R. 1259, and 95 A.L.R.2d 1122. But in practically all of the cases commented upon therein, most of them have to do with deliveries of articles from a truck to a sidewalk or loading dock where it was necessary to do something further to make delivery of the articles to the point designated for delivery; or where articles were delivered at a point on sidewalks or streets where third parties would stumble over them; or where they were trundled in hand trucks from a vehicle, and resulted in injuries to third persons; or where openings were left unguarded in sidewalks, or where persons had taken the first step in loading or unloading a truck, even though they had not been, at the time, actually loading or unloading articles on, or from, the truck. All of these cases presented a great variety of facts, as to whether there had been a complete delivery, or whether the operation of loading or unloading had ended.

These cases are not helpful in the controversy before us, although the language seems applicable, but what may be language applicable to determining the completion of delivery or unloading in cases, for instance, involving the delivery of beer barrels on a sidewalk or a load of coal deposited in the street, which results in accidents because passersby are unprotected from such deliveries and people are likely to be injured because of the action of the insured and his agents, is, in nowise, comparable to the facts in the instant case.

The closest case comparable to the one before us, on principles therein declared, decided by a court of last resort, is Travelers Insurance Company v. Buckeye Union Casualty Co., 172 Ohio St. 507, 178 N.E.2d 792, 95 A.L.R.2d 1114, already discussed herein, as well as in the accompanying opinion. The Travelers Insurance case was decided by the Supreme Court of Ohio December 20, 1961. Since that time there have been several adjudications involving ready-mixed concrete trucks engaged in delivering concrete to buckets attached to cranes for the eventual unloading to construction projects, in which accidents occurred during transporting or unloading by the crane operator. These adjudications have been handed down by tribunals that are not courts of last resort and in all these cases there have been able and well-reasoned opinions, and in all of them there have also been well-reasoned and vigorous dissenting opinions. Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 (1962), decided by the Supreme Court, Appellate Division, First Department; Travelers Ins. Co. v. W. F. Saunders & Sons, Inc., 18 A.D.2d 126, 238 N.Y.S.2d 495 (1963), decided by the Supreme Court Appellate Division, Third Department; Travelers Ins. Co. v. Employers Casualty Co., 335 S.W.2d 235 (1960), decided by the Texas Court of Civil Appeals; and Travelers Insurance Co. v. Employers Casualty Co., 370 S.W.2d 105 (1963), decided by the Texas Court of Civil Appeals. Aside from Travelers Insurance Co. v. Buckeye Union Casualty Co., supra, all of these cases, which are practically identical with the case before us, have been decided during the three years prior to the submission of the instant case. Because of the lapse of such a brief time since they have been decided, and because there have been vigorous and well-reasoned dissenting opinions in each of these cases, it can be said that the law, as yet, has not crystallized on this point; and we consider these

various opinions not as authorities to control our disposition of the present controversy, but as most beneficent auxiliaries in presenting what, to us, appears to be excellent reasoning in the determination of this problem, so full of complexity and contradiction.

In the Lamberti case, supra, a driver of a ready-mixed concrete truck was injured when a concrete bucket—attached to a crane—in which the concrete was poured, tipped and spilled some concrete on the truck driver, while the bucket was being hoisted to the 22nd floor of a housing project. It was held by the court that the injury suffered by the truck driver was sustained in the course of unloading the truck within the "loading and unloading" provision of liability insurance issued on the truck. We may say, at this time, that we differ with this conclusion. However, the court, speaking through Mr. Justice Rabin, stated, in deciding the case, that the simple issue was whether the accident happened during the course of the unloading of the truck; and that, if it did, then the crane operator was protected by the truck owner's policy of liability insurance. The court based its opinion on the authority of Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592, which was not a case pertaining to the delivery of cement by a truck to a bucket attached to a crane, but involved an employee of a store who was engaged in counting and checking clothes on the sidewalk adjoining the store before the truck driver leaned out and lifted the clothes into the truck. It appeared in the Wagman case that the store employee, after counting the clothes, started to walk back into the store and bumped into a pedestrian, causing her to fall and sustain injuries; and the court held that the pedestrian was entitled to recover from the insurer of the truck, because the store employee, at the time of the injury, was using the truck. This appears quite an extreme interpretation of liability under the "loading and unloading" provision. In any event, the Lamberti case and the Wagman case are completely dissimilar on their facts; and in Travelers

Insurance Co. v. Buckeye Union Casualty Co., 172 Ohio St. 507, 178 N.E.2d 792, 95 A.L.R.2d 1114, already discussed, the Supreme Court of Ohio, in commenting on the Wagman case, said that it could not, in the absence of any showing that the store employee was *using* the truck, reconcile the conclusion therein with what "we conceive to be the intention of the parties to such a contract."

In the Lamberti case, 16 A.D.2d 121, 226 N.Y.S.2d 70, 73, the New York Court observed that the defendant contended that "the place of delivery was the bucket of the crane and, therefore, the unloading operation was completed when the concrete had been placed in the bucket. We cannot agree." The court went on to say:

"The bucket cannot be considered 'the place * * * to which' the concrete was being delivered. It was merely the necessary conduit by which the concrete was conveyed to its place of delivery. The trip in the bucket to such place of delivery was merely an incident in the unloading operation. * * * The employment of the crane and the bucket was just as essential a part of the complete operation of unloading as was the discharge of the concrete from the truck into the bucket. * * * The means by which the material is removed from a truck is of no particular consequence whether the removal be effected by a rack, by hand or by a crane (See Employers Mut. Liability Ins. Co. of Wisconsin v. Pacific Indem. Co., 167 Cal.App.2d 369, 334 P.2d 658; Bituminous Casualty Corp. v. American Fidelity & Casualty Co., 22 Ill.App.2d 26, 159 N.E.2d 7). The sole test is whether the means used was in the process of unloading. In this case the bucket was merely an instrument to effect the unloading.

* * * * * *

"It is not unfair to the insurance carrier to hold that the delivery function was not complete until the concrete reached its ultimate destina-

tion. Particularly so in the case of mixed concrete where there could be no intermediate place of sojourn. By the very nature of that material it is essential that it be taken directly from the delivery truck to the place at which it becomes a permanent portion of the construction. Concrete, unlike lumber or other building materials, cannot be stored at the job site for later incorporation into the structure. It must be deposited immediately at its permanent resting place. It is for that very reason that a transit-mix truck is used in this type of operation."

In dissenting from the foregoing opinion, Mr. Justice Eager, with whom Mr. Justice Breitel concurred, said:

"Under the 'complete operation' doctrine adhered to in this state and as defined in Wagman, it is generally held that coverage by virtue of the 'loading and unloading' clause in an automobile liability policy continues until the goods, which were transported in the vehicle, reach 'the place * * * to which they are being delivered'. Wagman v. American Fidelity & Casualty Co., supra, [304 N.Y.] p. 494, 109 N.E.2d p. 594. But, in holding that the vehicle insurance coverage continues until delivery is completed, none of the leading decisions (Wagman included) purport to extend the unloading clause coverage to acts or omissions of the consignee or other third persons which are not reasonably or normally a part of the delivery function.

"The question of how far the 'unloading' coverage extends to include acts or omissions in connection with the movement of the goods from the insured vehicle is not a matter to be viewed solely in the light of the final destination of the goods as they move from the vehicle in the hands of the consignee. We must not lose sight of the fact that we are dealing with a policy primarily written to cover liability in connection with the ownership, maintenance and use of a vehicle in the transporting of goods; and that the clause for coverage during loading and unloading was written into the policy solely as an extension of the vehicle use coverage. See Wagman v. American Fidelity & Casualty Co., supra; Lumbermens' Mut. Cas. Co. v. Employers' L. Assur. Co., 1 Cir., 1958, 252 F.2d 463; Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251; Ferry v. Protective Indemnity Co., 155 Pa.Super. 266, 38 A.2d 493. Moreover, there is clear authority for the limiting of the coverage to accidents which are causally related to the use and unloading of the vehicle. 'The rationale of the "complete operation" doctrine * * * is that the facts of each case must establish a causal relationship between the "use" and "unloading" of the vehicle and the injuries inflicted.' Raffel v. Travelers Indemnity Co., 141 Conn. 389, 395, 106 A.2d 716, 719. 'There must be some causal relationship between the use of the insured vehicle as a vehicle and the accident for which recovery is sought.' Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., supra, 108 Utah 509, 161 P.2d 423, 427, [160 A.L.R. 1251.] (See also, Maryland Cas. Co. v. New Jersey Mfrs. & Co., Ins. Co., 48 N.J. Super. 314, 137 A.2d 577, 581, aff'd 28 N.J. 17, 145 A.2d 15).

"The causal connection between the use and unloading of the vehicle and the movement of the goods therefrom is broken where the consignee takes full and exclusive possession and control of the goods after they leave the truck. In the application of the 'complete operation' doctrine, it is merely held that the unloading coverage continues 'until delivery is effected' (B & D Motor Lines v. Citizens Casualty Co., 181 Misc. 985, 987, 43 N.Y.S.2d 486, 487, aff'd 267 App.Div. 955, 48 N.Y.S.2d 472) or, as otherwise stated, until

the goods are moved 'to the place where the employees of insured turn them over to the party to whom they are to make delivery' (Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., supra, 108 Utah 500, 505, 161 P.2d 423, 425, [160 A.L.R. 1251]).

"Where the consignee takes over and assumes exclusive possession and control of the goods or an installment thereof after they leave the vehicle, the delivery thereof is complete. Upon his taking full responsibility for the goods, and without there being any further duties imposed upon the vehicle carrier with respect to delivery thereof, the further movement of the goods in the hands of the consignee and in furtherance of his purposes is no part of the delivery function. Acts or omissions of the consignee or his employees in connection with such further movement, being independent acts on his account, are no part of the delivery process from the standpoint of the use or unloading of the truck. Thus, he and his insurer should be chargeable with responsibility therefor rather than the vehicle insurer. So, on reason and on authority, an accident resulting from such acts or omissions is not the subject of coverage under the use and unloading provisions of the automobile liability policy. See further, Employers' Mutual Liability Ins. Co. [of Wis.] v. Aetna Cas. and Surety Co., 7 A.D.2d 853, 181 N.Y.S.2d 813; Eastern Chems. Inc. v. Continental Cas. Co., 23 Misc.2d 1024, 199 N.Y.S. 2d 48; General Accident Fire & Life Assur. Corp. v. Jarmuth, 32 Misc.2d 424, 150 N.Y.S.2d 836; Moore-McCormack Lines, Inc. v. Maryland Casualty Co. (S.D.N.Y.), 181 F. Supp. 854; Zurich Gen. Acc. & Liability Ins. Co. v. American Mut. Liab. Ins. Co., 118 N.J.L. 317, 192 A. 387.

"We are, of course, to consider each case in light of the special facts involved, namely, the nature and quantity of the merchandise carried and delivered, the agreement of the parties, the normal custom and practices concerning delivery of the same, and the special circumstances surrounding the particular delivery. (See Appleman on Insurance Law and Practice, Vol. 7, Sec. 4322; Franklin Co-op. Creamery Ass'n v. Employers' L. Assur. Corp., 200 Minn. 230, 273 N.W. 809, 810.) Here, the cement, upon its being removed from the truck, was to be immediately taken over and used by the contractor, Knickerbocker Construction Corporation, in its construction work. The final destination of the cement in the hands of the contractor was a point in the building's 18th or 19th floor where it was to be poured, leveled and laid into a floor. In this connection, the hoisting of the same from the insured truck to the floor high above was by crane and bucket owned, controlled and operated by the contractor. The matter of getting the cement up there and the pouring and laying of the same in the floor was of no concern to the truck carrier. Its business was solely the sale, mixing and delivery of cement, and it does not appear as a matter of fact or as a matter of common practice that the hoisting, pouring and laying the cement was a part of the delivery function from the standpoint of the use of the truck.

"Under the circumstances here, it is not logical to view the acts of the contractor in using the crane and bucket to hoist and pour the cement as a part of the trucker's delivery function. Rather, any person concerned with such acts would naturally look upon them as independent acts in furtherance of the construction function. Furthermore, it is well known that contractors generally carry liability insurance to cover all operations in connection with their construction work, and thus, one would ordinarily look for cover-

age for such operations to the liability insurer of the contractor rather than to the vehicle liability insurer.

"To direct indemnification of the contractor here by the vehicle insurer for the acts of the contractor's employees in the hoisting of the cement for construction purposes has the effect, in my opinion, of broadening the unloading clause to cover hazards not reasonably to be considered within the contemplation of the parties to the vehicle policy. To so hold does violence to the fundamental rule that the question of coverage is to be determined in light of the intention of the parties to the policy contract as disclosed by the provisions thereof as a whole. See 45 C.J.S. Insurance § 827. Also Ann. 160 A.L.R. 1262. Wagman and the decisions cited by the majority do not, in my opinion, call for such a result and, therefore, I believe that the conclusion reached below was correct."

In Travelers Insurance Co. v. W. F. Saunders & Sons, Inc., 18 A.D.2d 126, 238 N.Y.S.2d 495, under practically identical facts as the Lamberti case, the court followed the reasoning and conclusion in Lamberti. The Saunders case involved the question whether injuries sustained by a worker at a construction site came within the coverage provided by the "loading and unloading" clause of a comprehensive liability insurance policy issued to the owner of a ready-mix truck.

In the operation of the truck in question, it appeared that the concrete flowed from the truck into a bucket permanently attached to a crane. The crane and bucket were owned by a subcontractor on the building construction job, and were used to convey the concrete from the truck to the point where it was to be used in the construction.

After the bucket was filled with concrete, it was supposed to be raised by the crane to the second floor of the building, and the crane was then to return to the truck for more concrete. While the bucket was being raised in the above-mentioned operation, the crane overturned, and

an employee of a different subcontractor was injured by the crane with the result that he brought suit against the owner of the crane.

The insurer of the owner of the crane then brought action for a declaratory judgment, declaring that the crane owner and the operator thereof were additional "insureds" under the comprehensive liability insurance policy issued by the Globe Indemnity Company to the owner of the ready-mix truck. These are identical to the facts before us in the instant case except that in the Saunders case, above cited, the crane overturned in the unloading process, whereas, in the instant case, while the crane and bucket were delivering concrete, the boom of the crane collapsed and dropped on James Withers, an employee of the general contractor.

In the Saunders case, the court held that the process by which the concrete was being delivered was part and parcel of unloading, and the unloading was not completed until delivery was effected; that it was not completed at the time of the accident; and that the owner and operator of the crane were covered as additional "insureds" by the "loading and unloading" clause of the insurance policy issued to the owner of the ready-mix truck.

In a strong dissent in the Saunders case, however, Mr. Justice Herlihy said:

"In deciding who is an 'insured' under this policy, it is necessary to factually determine when the goods handled have been delivered or unloaded.

"It is obvious that the 'entire operation' depends upon the nature of the goods being delivered and the 'business' of the carrier. In other words, goods may be delivered at a particular point in one situation, but, given the same goods, the point of delivery may be at another point in a different situation, for delivery is a fact and not a rule of law.

"This action is concerned with the contracts of sub-contractors and

where legal responsibility can be readily perceived and separated. The stipulated statement of facts agrees that the defendant-appellant subcontracted *'to supply the concrete to the job'*. It was further agreed that the plaintiff-respondent subcontracted 'to provide a certain Erie crane and its operator and oiler, which crane was to be utilized for *transporting the cement* from the point where it was *unloaded* into the crane bucket by Saunders' ready mix trucks to a point on the second floor of the building addition where it was *unloaded* from the bucket and utilized in the construction of said addition'. (Emphasis supplied) It is readily perceivable under the stipulation, that the 'unloading' was two-fold, (1) by the appellant and (2) by the respondent. If the 'complete operation theory' is to be applied to such a contractual relationship, then liability under the hauler's policy could extend through several subcontractors 'unloading' until the product is finally used.

"In this case it is apparent that delivery or unloading was meant to be the bucket of the crane, from which it could then be *used* at any point upon the building. To hold that delivery is at the point of use in these circumstances overlooks the physical limitation imposed by the nature of the goods and the business of the carrier. Modern methods of conveyance, such as a ready mix concrete truck, substantially alter prior methods of doing business, and the fact that the sub-contractor did not provide a bucket large enough to permit the complete unloading of the cement in one scoop should not be the determining factor for extending liability under the hauler's policy.

"The strained construction of the provisions of the insurance policy, as applied here, is neither reasonable nor practical and, considering the stipulated facts, unrealistic.

"In McGrail v. Equitable Life Assurance Society, 292 N.Y. 419, the court said at page 424, 55 N.E.2d 483, 486: 'Rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other contracts.' "

In Travelers Insurance Co. v. Employers Casualty Co., 370 S.W.2d 105, the Texas Court of Civil Appeals held that where concrete had been poured from a ready-mixed concrete truck into a bucket attached to a crane, and the crane afterward collapsed while transporting the concrete to a building project, killing a construction worker, the insurer of the ready-mixed concrete truck, under a policy with "loading and unloading" clauses, was not liable under the terms of the policy covering the truck while unloading the concrete. It was argued, in opposition, that ready-mixed concrete was not a storage item, since it began to harden immediately upon coming to rest, and that it was not practicable to "stockpile" mixed concrete.

In holding that the insurer of the truck was not liable, the court said that the unloading of the cement was completed when it was turned over to the party to whom delivery was to be made—and that, in that case, such party was the subcontractor operating the crane and bucket, acting on behalf of the general contractor with whom the owner of the ready-mixed concrete truck had his contract. The court stated: "The actual unloading of the material from Capitol's truck into Borders' bucket had been completed and Borders' crane collapsed after the concrete had been turned over to Borders." The court also said: "We think also that coverage under the 'loading and unloading' provisions includes a requirement of showing some causal connection between the loading or unloading and the accident. * * * In this case, so far as the record shows, it was a defect in Borders' crane which caused the accident, not anything done in the unloading of Capitol's truck. The connection between the accident and unloading of the truck seems too remote to include coverage of the accident under

Capitol's policy." In the foregoing case, there was a strong dissent with regard to the portion of the opinion above commented upon, by Mr. Justice Bateman, who concurred, however, in the general result. The dissent was based upon much that was relied upon in the opinion of the New York case of Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N. Y.S.2d 70. See also Travelers Ins. Co. v. Employers Casualty Co., Tex.Civ.App., 335 S.W.2d 235.

From the foregoing, a conclusion that the owner and operator of the crane and bucket, in the instant case, were persons actually using the ready-mixed concrete truck at the time of the accident is, in my opinion, a strained construction of the policy provision insuring "any person while using the automobile * * * provided the actual use of the automobile is with the permission of the assured."

It further appears that the policy insuring against injury by a person while actually using the automobile for unloading, does not insure the crane owner or operator since the automobile, at the time of the injury, was not being used in unloading. The unloading by the truck owner or operator, of the bucket of concrete in question, was completed before the accident took place. The fact that it was contemplated that there would be future unloadings does not change the situation, since, obviously, it was also contemplated that the truck operator's duty was fulfilled when he delivered the concrete in question to the agent of the general contractor, and no obligation rested upon him to assist in any further handling of the bucket of concrete. This, of course, is not to say that, if the owner of the ready-mixed concrete truck had been in privity with the operator or owner of the crane and bucket, the insurer of the truck would not have been liable on any and all delivery of installments or separate buckets of concrete. By being in privity, he would have been unloading and delivering whatever the crane operator was unloading or delivering. In such a case, both the truck owner and the crane owner would be liable for accidents resulting from delivery of the concrete to any part of the construction project.

When the concrete was poured from appellant's ready-mixed concrete truck into the bucket attached to the crane, there was a complete delivery of that concrete. There was a final, physical transfer of the possession of the concrete by the truck owner to an independent contractor acting as the agent of the general contractor.

It is true that the truck operator was engaged in delivering and unloading, and the crane operator was engaged in delivering and unloading. But the delivering and unloading by the truck operator was not a part of a continuous operation with the delivering and unloading by the crane operator. The truck operator had no duty to do anything more than to unload and deliver the concrete to the crane operator. After delivering the concrete to the crane operator, an independent contractor acting as the agent for the general contractor, the truck operator had no obligation to assist in the delivery of the concrete and its unloading at an ultimate point of delivery, known only to the general contractor and the crane operator. The duty of the truck operator ended when he delivered the concrete to the crane operator. He had no duty to do anything further, and, in any event, it was a physical impossibility for him to do more.

After the concrete from the truck was deposited in the bucket of the crane owner and operator, there was an end of all control or dominion over that concrete on the part of the truck owner. How can this case be distinguished from a situation in which the owner of a ready-mixed concrete truck, under an agreement to deliver concrete at a certain point to the owner of a building project, would pour the concrete into a bucket held by the owner of the project, who, in turn, would then carry it into the building, enter an elevator, spread it on one of the upper floors, and, in doing so, injure a third party? It hardly seems that the owner of the project, in such a case, would, at the time of the accident, be in actual use

of the truck for unloading purposes. All that the truck owner would be obliged to do, in such a case, would be to deliver the concrete to a point adjacent to the building site, open a funnel, and let the concrete flow into the bucket of the owner of the building; and by no canon of construction would it appear that the insurer of the truck would be liable for the negligence of the owner of the building project thereafter.

There was no obligation, implicit or express, upon the part of the owner or operator of the ready-mixed concrete truck to deliver the concrete to some specific point in the building project—or to assist in delivering the concrete at such point, or to assume any liability for someone else—in this case, the crane operator —who, separate and apart from any action of the truck owner, actually did have the duty, under contract, to deliver the concrete from the truck to a particular point at the project. It makes no difference that concrete is not a "storage item" and cannot be delivered for "stockpiling." The truck owner was only bound to deliver the concrete to the general contractor, or to his agent. When that delivery was made, and possession, dominion, and control over that load of concrete was given over to the general contractor, or his agent, delivery of that load was made by the truck owner, and unloading of that concrete, so far as the truck owner is concerned, was completed. When the truck owner has delivered possession of the concrete to the general contractor, or his agent, he has unloaded it; and he is not responsible thereafter for what the general contractor, or his agent, does when either of them assumes to transport such concrete to some other place.

It does not seem to me that it could possibly have been the intention of the truck owner and his insurer to insure against accidents caused by third parties in the delivery and transportation of the concrete, subsequent to the time the truck owner had made delivery of the concrete in question to such third parties, as the truck owner was, by contract, required to do.

It can be assumed that the truck owner and the officials of the insurance company were intelligent businessmen. Insurance policies must be given a fair and sensible interpretation, consonant with the apparent object and intention of the parties, and a construction such as would be given the contract by the ordinary, intelligent businessman, and not a strained or forced construction.

When delivery of the concrete was made by the ready-mixed concrete truck to the bucket of the crane operator, the general contractor's agent, at a place where such delivery was specified to be made, and the crane operator there received the concrete and then transported it, on orders of the general contractor, to the building project, it cannot, in my view, be held that the crane operator was "actually using" or "making a particular use" of the truck at the time of the accident, for the purpose of unloading. For such a holding would seem contrary to a reasonable interpretation to be given the words "any person while using the automobile" for unloading, "actual use of the automobile" for unloading, and "making a particular use" of the automobile, as set forth in the insurance policy.

To hold that the insurer of the truck owner, in this case, also insured the owner of the crane, by virtue of the provisions of the policy insuring an actual user of the automobile against injury while unloading, appears to me to do violence to the accepted canons of construction of an insurance contract—that the construction of the policy must be reasonable and sensible, consonant with the apparent object and plain intention of the owner of the truck and his insurer; and that it should be a construction which would be given the contract by an ordinary, intelligent businessman, and not a strained or forced construction.

As to a causal relationship between the use of the insured vehicle and the accident, it appears that this is determined by the question whether the third party is using the truck for the purpose of unloading with the permission of the named

insured. If he is, there is a causal relationship between the unloading and the accident. As above remarked, the conclusion of this opinion is that the third party was not using the truck at the time of the accident.

In accordance with the foregoing, I would reverse the judgment appealed from.